NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11815

COMMONWEALTH  vs.  TYRONE J. CLARK.


Suffolk.     March 2, 2015. - July 9, 2015.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk, &
Hines, JJ.


Deoxyribonucleic Acid.  Evidence, Scientific test, Exculpatory,
    Relevancy and materiality.  Statute, Construction.
    Practice, Criminal, Postconviction relief, Discovery.



    Indictments found and returned in the Superior Court on
August 10, 1973.

    A postconviction motion for scientific or forensic
analysis, filed on August 5, 2013, was heard by Thomas A.
Connor, J.

    The Supreme Judicial Court on its own initiative
transferred the case from the Appeals Court.


    Neil D. Raphael for Tyrone J. Clark.
    Donna Jalbert Patalano, Assistant District Attorney, for
the Commonwealth.
    Lisa M. Kavanaugh & Ira L. Gant, Committee for Public
Counsel Services, & Denise McWilliams & Chauncey B. Wood, for
Committee for Public Counsel Services Innocence Program &
others, amici curiae, submitted a brief.

SPINA, J.  On January 23, 1974, a Suffolk County jury convicted Tyrone J. Clark of rape, G. L. c. 265, § 22; unarmed robbery, G. L. c. 265, § 19; and kidnapping, G. L. c. 265, § 26. The Appeals Court affirmed the convictions in a published opinion.  See Commonwealth v. Clark, 3 Mass. App. Ct. 481 (1975).  On January 14, 2000, he filed a motion for a new trial, which was denied.  Clark was paroled in 2005, but his parole was revoked when he pleaded guilty on May 25, 2006, to larceny over $250, G. L. c. 266, § 30 (1).

In 2012, the Legislature enacted G. L. c. 278A, "An Act providing access to forensic and scientific analysis" (act). St. 2012, c. 38.  "The enactment, which occurred in the wake of national recognition that 'DNA testing has an unparalleled ability both to exonerate the wrongly convicted and to identify the guilty,' District Attorney's Office for the Third Judicial Dist. v. Osborne, 557 U.S. 52, 55 (2009), permits access to forensic and scientific evidence on the filing of a motion by an individual who has been convicted of a criminal offense, who consequently has been incarcerated, and who asserts factual innocence."  Commonwealth v. Wade, 467 Mass. 496, 497 (2014). See G. L. c. 278A, § 2.  The purpose of the act was "to remedy the injustice of wrongful convictions of factually innocent persons by allowing access to analyses of biological material with newer forensic and scientific techniques . . . . [that]

provide a more reliable basis for establishing a factually correct verdict than the evidence available at the time of the original conviction." Wade, supra at 504, quoting 2011 Senate Doc. No. 753 and 2011 House Doc. No. 2165. The act created a process, separate from the trial and any subsequent proceedings challenging an underlying conviction, that permits forensic and scientific analysis of evidence or biological material, the results of which could support a motion for a new trial. See G. L. c. 278A, §§ 3, 6, 7; Wade, supra at 505.

On August 5, 2013, Clark filed in the Superior Court a postconviction motion pursuant to G. L. c. 278A, § 3 (§ 3 motion), for forensic or scientific analysis of certain evidence presented at his trial, and for discovery regarding the location of other items that were referenced at trial but not admitted in evidence. More specifically, he sought deoxyribonucleic acid (DNA) testing of the handle of a kitchen knife that the victim purportedly grabbed from her assailant and stabbed into the assailant's shoulder. He also sought discovery concerning the victim's bloody clothing, a bloody towel, and a pair of men's socks, all of which, in Clark's view, might contain DNA evidence and should be made available to him for potential testing under G. L. c. 278A. In connection with his § 3 motion, Clark filed an affidavit stating that he is factually innocent of the crimes of which he was convicted. The Commonwealth opposed Clark's

motion, contending that Clark had not shown how forensic testing of the knife handle would provide evidence material to the identification of the perpetrator of the crimes, that Clark had shown no chain of custody for the knife handle, that the jurors had based their verdicts on compelling identification evidence, and that the Commonwealth did not possess any of the items for which Clark sought discovery. Following a hearing, a judge, who was not the trial judge, denied Clark's § 3 motion.[1]

Clark appealed the judge's order,[2] the case was entered in the Appeals Court, and we transferred it to this court on our own motion. Clark contends on appeal that the judge misinterpreted the requirements for postconviction DNA analysis as set forth in the plain language of G. L. c. 278A and, consequently, erred in denying his motion for such testing and for related discovery. For the reasons that follow, we conclude that Clark met the requirements of G. L. c. 278A, § 3; that the judge erred in determining that Clark was required to establish the existence of biological material on the handle of the knife; that the judge properly denied Clark's request for discovery;

---

[1] At the time the judge ruled on Tyrone J. Clark's motion pursuant to G. L. c. 278A, he did not have the benefit of our decision in Commonwealth v. Wade, 467 Mass. 496 (2014), which is discussed in the statutory framework portion of this opinion.

[2] General Laws c. 278A, § 18, provides that "[a]n order allowing or denying a motion for forensic or scientific analysis filed under this chapter shall be a final and appealable order."

and that the judge must make findings of fact and conclusions of law regarding whether Clark satisfied G. L. c. 278A, § 7 (b) (2), (3), (5), and (6). Accordingly, we reverse the judge's order denying Clark's § 3 motion, and remand for further proceedings consistent with this opinion.[3]

1. Statutory framework. Before setting forth the underlying facts in this case, we begin with an overview of G. L. c. 278A, so as to put the present proceedings in context. In Wade, a case that raised issues of first impression regarding the proper interpretation of G. L. c. 278A, this court considered the threshold requirements that must be met by a party seeking forensic or scientific analysis pursuant to § 3, and articulated the standard of review for determining whether those requirements have been satisfied. See Wade, 467 Mass. at 501-506. We stated that G. L. c. 278A "creates a two-step procedure for requesting DNA testing or analysis. First, a threshold determination is made by the court in which the conviction was entered as to whether the motion meets the preliminary criteria set forth in G. L. c. 278A, § 3. If those criteria are met, a hearing 'shall' be conducted pursuant to G. L. c. 278A, §§ 6 and 7, to determine whether a petitioner has

---

[3] We acknowledge the amicus brief submitted in support of Clark by the Committee for Public Counsel Services Innocence Program, New England Innocence Project, Innocence Network, and Massachusetts Association of Criminal Defense Lawyers.

established by a preponderance of the evidence sufficient facts for a judge to order DNA testing or further discovery." Id. at 501.

With respect to the threshold inquiry, a person seeking relief under G. L. c. 278A shall file a motion that includes all of the information set forth in § 3 (b),[4] and, "when relevant, shall include specific references to the record in the underlying case," or to supporting affidavits "signed by a

_____

[4] General Laws c. 278A, § 3 (b), provides that the motion shall include the following information:

"(1) the name and a description of the requested forensic or scientific analysis;

"(2) information demonstrating that the requested analysis is admissible as evidence in courts of the commonwealth;

"(3) a description of the evidence or biological material that the moving party seeks to have analyzed or tested, including its location and chain of custody if known;

"(4) information demonstrating that the analysis has the potential to result in evidence that is material to the moving party's identification as the perpetrator of the crime in the underlying case; and

"(5) information demonstrating that the evidence or biological material has not been subjected to the requested analysis because [of one of five reasons enumerated in G. L. c. 278A, § 3 (b) (5)]."

Pursuant to G. L. c. 278A, § 3 (c), "[i]f the moving party is unable to include for filing with the motion any of the items or information described in subsection (b), or if the moving party lacks items or information necessary to establish any of the factors listed in [§ 7 (b)], the moving party shall include a description of efforts made to obtain such items and information and may move for discovery of such items or information from the prosecuting attorney or any third party."

person with personal knowledge of the factual basis of the motion." G. L. c. 278A, § 3 (b). Accompanying the motion shall be "an affidavit stating that the moving party is factually innocent of the offense of conviction and that the requested forensic or scientific analysis will support the claim of innocence." Id. at § 3 (d). The Commonwealth "may provide a response to the motion, to assist the court in considering whether the motion meets the requirements [of § 3]." Id. at § 3 (e). Then, a judge shall review the motion expeditiously and "shall dismiss, without prejudice, any such motion without a hearing if the court determines, based on the information contained in the motion, that the motion does not meet the requirements set forth in [§ 3]." Id. The court "shall notify" the parties as to whether the motion is dismissed, or whether it is sufficient to proceed to the next level of review under § 7. Id.

The threshold inquiry made pursuant to § 3 is "limited, based primarily on the moving party's filings, and . . . essentially nonadversarial." Wade, 467 Mass. at 503. At this first stage, "a moving party is not required to 'establish any of the [statutory] factors' alleged in the § 3 motion." Id. at 503-504, quoting G. L. c. 278A, § 3 (c). See Commonwealth v. Donald, 468 Mass. 37, 41 (2014) ("a moving party is required only to point to the existence of specific information that

satisfies the statutory requirements").  "Viewed in light of the act as a whole, the Legislature clearly intended that, to proceed to a hearing, a § 3 motion requires only the limited showing set forth explicitly in G. L. c. 278A, § 3 (b) and (d), and review of the motion in order to determine whether a hearing will be conducted is confined to the assertions in the motion, the affidavits and supporting documents attached thereto, and any response that may be filed by the Commonwealth to assist the court."  Wade, supra at 504.  A judge conducting an inquiry under § 3 "is not called upon to make credibility determinations, or to consider the relative weight of the evidence or the strength of the case presented against the moving party at trial."  Id. at 505-506.

If a motion meets the requirements of § 3, then a judge "shall order a hearing on the motion."  G. L. c. 278A, § 6 (a). The Commonwealth "shall file a response with the court within [sixty] days" after the court issues notice of further proceedings, id. at § 4 (b), and "shall include any specific legal or factual objections" it may have "to the requested analysis."  Id. at § 4 (c).  After reviewing the motion, together with the Commonwealth's response, and holding the requisite hearing, the judge shall determine whether the moving party has demonstrated, by a preponderance of the evidence, all

of the criteria set forth in G. L. c. 278A, § 7 (b).[5]  See id. at

§ 7 (a), (b).  If the moving party has done so, then the judge

"shall allow the requested forensic or scientific analysis."[6]

Id. at § 7 (b).  The judge is required to "state findings of

fact and conclusions of law on the record," or issue written

findings and conclusions "that support the decision to allow or

deny [the] motion brought under [§] 3."  Id. at § 7 (a).  In

---

[5] General Laws c. 278A, § 7 (b), provides that the moving party shall demonstrate the following criteria by a preponderance of the evidence:

"(1) that the evidence or biological material exists;

"(2) that the evidence or biological material has been subject to a chain of custody that is sufficient to establish that it has not deteriorated, been substituted, tampered with, replaced, handled or altered such that the results of the requested analysis would lack any probative value;

"(3) that the evidence or biological material has not been subjected to the requested analysis for any of the reasons in [§ 3 (b) (5) (i)-(v)];

"(4) that the requested analysis has the potential to result in evidence that is material to the moving party's identification as the perpetrator of the crime in the underlying case;

"(5) that the purpose of the motion is not the obstruction of justice or delay; and

"(6) that the results of the particular type of analysis being requested have been found to be admissible in courts of the commonwealth."

[6] Where forensic or scientific analysis is allowed, G. L. c. 278A, § 8, sets forth the conditions by which such analysis should proceed.

addition, the judge may authorize discovery, as appropriate, pursuant to G. L. c. 278A, § 7 (c).

2. Factual and procedural background. We rely on the facts set forth in Clark, 3 Mass. App. Ct. at 482-484, and in the judge's memorandum of decision denying Clark's § 3 motion.

On the afternoon of June 23, 1973, the victim, a twenty-three year old woman, was returning to her apartment on Park Drive in Boston from a shopping trip. As she approached the door to her building, an assailant grabbed her from behind, followed her into the vestibule, struck her, and demanded her money. The assailant forced the victim upstairs to her apartment. After entering the apartment, he pulled the victim into the kitchen, took a knife from a drawer, and then dragged her into the bedroom where he repeatedly struck her in the face, told her to undress, and brutally raped her. At one point during this assault, the victim wrested the knife from her assailant's grip and "attempted to stab him in the back," striking him in the shoulder. The blade of the knife broke off during the struggle.[7]

After this initial attack, the assailant ordered the victim to get dressed and come with him. The victim put on her clothes

_____

[7] Photographs of the knife show that a small portion of the base of the blade remains attached to the handle. When we speak about the knife handle in this opinion, we are referring to the actual wooden handle plus the small portion of the blade that remains attached to it.

and used a towel from the kitchen to wash the blood from her face.  When she had finished, the assailant grabbed the towel and used it to wipe fingerprints off the wall where he had been leaning.  As they were leaving the apartment, the assailant told the victim, "I've got a gun and if you try to escape I will shoot you or anyone else that tries to help you."

The assailant led the victim through the Fenway section of Boston and took her to a small Spanish restaurant on Tremont Street in an area that was unfamiliar to her.  They stayed for about fifteen minutes while the assailant had something to eat. The victim testified that she did not attempt to ask for help because she believed that none of the restaurant employees understood English.

After leaving the restaurant, the assailant and the victim proceeded to board a bus.  She whispered to the driver for help, but he made no effort to come to her aid.  The assailant and the victim got off the bus at the next stop.  He led the victim to a secluded area, demanded that she undress again, forced her to perform oral sex, and threatened to kill her.  They then left the secluded area.  As they passed a fire station, the victim broke away from her assailant, ran into the station, and grabbed one of the fire fighters, screaming for help.  The assailant followed the victim into the fire station and said, "I want my woman."  When one of the fire fighters suggested that they call

the police, the assailant fled the scene.  The victim was taken to Boston City Hospital, where she was treated for sexual assault.

The following day, Detective John Farrell recovered from the victim's apartment the handle of the knife and a pair of men's socks.[8]  The blade of the knife was not found.  It also appears that the bloody towel was never recovered by the police. That same day, the victim went to Boston police headquarters where she viewed numerous photographs based on her description of the assailant, but she was unable to make an identification.

On June 25, Detective Farrell showed the victim a group of eleven photographs, from which she selected the photograph of Clark as her assailant.  The proprietor of the Spanish restaurant and four fire fighters also chose his photograph from the same array.  Clark was arrested on June 26 and taken to the police station, where he was told to remove his clothes. Detective Farrell examined Clark and did not observe any puncture marks or knife wounds on his back.  At trial, the victim and each of the five witnesses who had selected Clark's photograph from the array identified him as the assailant.  On January 23, 1974, a jury convicted Clark of rape, unarmed robbery, and kidnapping.

---

[8] The socks were never introduced in evidence at trial.

In his memorandum of decision denying Clark's § 3 motion, the judge first concluded that, with respect to the request for DNA testing of the knife handle, Clark had not satisfied his burden of proving that such analysis had the potential to yield evidence that would be material to his identification as the perpetrator of the underlying offenses, as required by § 7 (b) (4). See note 5, supra. The judge recognized that G. L. c. 278A should not be applied in "an overly stringent or a grudging fashion." Nonetheless, he stated that the mere existence of the knife handle, without a reasonable possibility of biological material thereon, was insufficient to satisfy § 7 (b) (4). The judge pointed out that the victim's trial testimony provided no factual basis for a finding that the knife came in contact with Clark's skin, or that he ever bled as a consequence of the victim's effort to stab him. The judge said that even though § 7 (b) (1) refers to the existence of "evidence or biological material," not both, § 7 (b) (4) implicitly requires a showing, by a preponderance of the evidence, of some biological material on the knife handle because the requested DNA analysis must have "the potential to result in evidence that is material to the moving party's identification as the perpetrator." In the judge's view, there is always a theoretical possibility that the knife handle or any item seized from the crime scene could yield some biological

material tied to the victim's assailant, but this possibility did not relieve Clark of his burden of making a threshold showing that there exists some realistic potential, grounded in the facts of the case, that a particular item could yield exculpatory evidence.

The judge next considered Clark's request for discovery regarding a pair of men's socks and a bloody towel. With respect to the socks,[9] the judge said that Clark's reliance on Detective Farrell's testimony that he recovered the socks from the victim's apartment was insufficient to satisfy the materiality requirement of § 7 (b) (4) where there was no evidence that the socks once belonged to, or were touched by, the victim's assailant. The judge also took note of the Commonwealth's assertion that it did not possess the socks. He concluded that Clark had not satisfied his burden of demonstrating, by a preponderance of the evidence, that searching for and testing the socks would provide evidence material to the identification of the perpetrator of the underlying crimes. With respect to the bloody towel, the judge said that there was no evidence in the record that the towel was

---

[9] At the hearing, Clark's attorney clarified that he wanted to interview the keeper of the records of the Suffolk County district attorney's office and to inspect the premises of that office in an effort to ascertain the location and significance of the socks.

recovered by the police. He again took note of the Commonwealth's assertion that it did not possess the towel. The judge concluded that the record failed to establish a reasonable possibility that the towel had been preserved or that it would produce any evidence material to the identification of the perpetrator. Accordingly, the judge declined to authorize discovery with respect to either the socks or the towel.[10]

3. Forensic and scientific analysis under G. L. c. 278A. Clark contends in this appeal that the judge interpreted the requirements of G. L. c. 278A in a manner that misconstrues the plain language and legislative intent of the act. He asserts that, pursuant to § 7 (b) (1), he was required to demonstrate, by a preponderance of the evidence, "that the evidence or biological material exists" (emphasis added). Clark argues that he satisfied this criterion by demonstrating the existence of the handle of the knife that was used by the assailant to threaten the victim and by the victim to stab her assailant. He points out that he could not yet demonstrate the existence of biological material on the handle where such circumstance was

_____

[10] In the present appeal, Clark has not challenged the judge's decision as to discovery regarding the towel. Therefore, we do not consider the matter further. Similarly, at the hearing, Clark's attorney did not discuss the victim's bloody clothing, and the judge made no mention of those clothes in his memorandum of decision. Because Clark has not objected to this aspect of the judge's decision, it is not open to review.

the reason he sought DNA analysis in the first place. Moreover, he continues, this additional proof was not required under § 7 (b) (1). Clark further claims that he satisfied § 7 (b) (4) because the requested DNA testing of the handle has the potential to identify the perpetrator of the underlying crimes. In his view, the judge's interpretation of the provisions of G. L. c. 278A thwarts the purpose of the act, which is to provide a mechanism for greater access to postconviction DNA analysis.

"We review questions of statutory interpretation de novo." Wade, 467 Mass. at 501. Our analysis of the provisions of G. L. c. 278A is guided by the familiar principle that "a statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated." Hanlon v. Rollins, 286 Mass. 444, 447 (1934). See Wade, supra; Sullivan v. Brookline, 435 Mass. 353, 360 (2001). Courts must ascertain the intent of a statute from all its parts and from the subject matter to which it relates, and must interpret the statute so as to render the legislation effective, consonant with sound reason and common sense. See Champigny v. Commonwealth, 422 Mass. 249,

251 (1996); <u>Pentucket Manor Chronic Hosp., Inc</u>. v. <u>Rate Setting Comm'n</u>, 394 Mass. 233, 240 (1985).

As we have noted, at the time the judge ruled on Clark's § 3 motion, he did not have the benefit of our decision in <u>Wade</u>. See note 1, <u>supra</u>. Consequently, neither the judge's memorandum of decision nor the Superior Court docket indicates that the judge specifically considered whether the motion met the criteria set forth in § 3. Instead, the judge proceeded to hold a hearing, as is statutorily mandated pursuant to G. L. c. 278A, § 6 (<u>a</u>), in those cases where a motion has satisfied the requirements of § 3, and to consider whether Clark had demonstrated, by a preponderance of the evidence, the requirements of § 7 (<u>b</u>). Given that the judge did not dismiss the motion prior to holding a hearing, we could infer that he implicitly determined that the information presented in the motion met the criteria of § 3. However, as we explained in <u>Wade</u>, 467 Mass. at 501, the procedure for requesting DNA testing under G. L. c. 278A is a two-step process, the first step of which requires a judge to make a threshold determination whether a motion meets the requirements of § 3, and to notify the parties "as to whether the motion is sufficient to proceed under [G. L. c. 278A] or is dismissed." G. L. c. 278A, § 3 (<u>e</u>). That did not happen in this case, and the Commonwealth argues on appeal that Clark's motion failed to meet the preliminary

criteria set forth in § 3. Because the threshold inquiry under § 3 does not require a judge "to make credibility determinations, or to consider the relative weight of the evidence or the strength of the case presented against the moving party at trial," Wade, supra at 505-506, but, rather, is based on documentary evidence (the motion and any response that may be provided by the Commonwealth), we stand in the same position as the judge in determining whether the information presented in the motion meets the requirements of § 3. See generally Commonwealth v. Hoyt, 461 Mass. 143, 148-149 (2011) (appellate court in same position as motion judge to evaluate documentary evidence); Commonwealth v. Novo, 442 Mass. 262, 266 (2004). Accordingly, we first shall consider whether Clark's motion met the preliminary criteria set forth in § 3. If it did, we then shall proceed to determine whether the judge properly denied Clark's motion on the ground that Clark failed to satisfy § 7 (b) (4) where he did not show that some biological material exists on the knife handle. Finally, we shall consider infra whether the judge properly denied Clark's request for discovery regarding the pair of men's socks. See note 10, supra.

We begin with an analysis of G. L. c. 278A, § 3, mindful of the fact that Clark is only required "to point to the existence of specific information that satisfies the statutory

requirements," Donald, 468 Mass. at 41, and need not make an evidentiary showing by a preponderance of the evidence.  See Wade, 467 Mass. at 501, 503-504.  Compare G. L. c. 278A, § 3 (b), with G. L. c. 278A, § 7 (b).  First, Clark was required to set forth in his motion "the name and a description of the requested forensic or scientific analysis."  G. L. c. 278, § 3 (b) (1).  He stated that he was seeking DNA testing, using the Y-chromosome short tandem repeat (Y-STR) method,[11] on the handle of the knife that the victim grabbed from her assailant and attempted to stab into his back, striking the assailant in the shoulder.  We conclude that Clark met the requirements of § 3 (b) (1).

Second, Clark was required to set forth in his motion "information demonstrating that the requested analysis is admissible as evidence in courts of the commonwealth."  G. L. c. 278A, § 3 (b) (2).  He correctly stated that the results of DNA testing using the Y-STR method are admissible in Massachusetts courts.  See, e.g., Commonwealth v. Bizanowicz, 459 Mass. 400, 406-407 (2011).  We conclude that Clark met the requirement of § 3 (b) (2).

---

[11] The Y-chromosome short tandem repeat (Y-STR) method looks at deoxyribonucleic acid (DNA) on the Y-chromosome, found exclusively in males.  See Commonwealth v. Issa, 466 Mass. 1, 4 (2013).

Third, Clark was required to set forth in his motion "a description of the evidence or biological material that [he] seeks to have analyzed or tested, including its location and chain of custody if known." G. L. c. 278A, § 3 (b) (3). He stated that he was seeking to have DNA testing performed on any physical evidence ascertainable from the handle of the knife, including blood evidence. Clark further stated that the handle was in the possession of the Suffolk County district attorney's office and that, as far as he and his attorney were aware, it had been in the custody of that office since 1973, when his case was tried. In the Commonwealth's view, Clark failed to adequately describe the chain of custody of the knife handle. We disagree. Section 3 (b) (3) provides that the location and chain of custody of evidence or biological material that a moving party seeks to have analyzed shall be described "if known." This language plainly suggests that there may be instances when such information is not known to a moving party, and this circumstance will not be an impediment to satisfying § 3 (b) (3). Clark described the current location of the knife handle, as well as its chain of custody to the extent that he had knowledge of the matter. We conclude that Clark met the requirements of § 3 (b) (3).

Fourth, Clark was required to set forth in his motion "information demonstrating that the analysis has the potential

to result in evidence that is material to the moving party's identification as the perpetrator of the crime in the underlying case." G. L. c. 278A, § 3 (b) (4). He stated that the knife handle was the only physical evidence introduced at trial, and he referred to the victim's testimony that she grabbed the knife from her assailant and attempted to stab him in the back, striking the assailant in the shoulder and causing the blade to break off. Further, Clark denied knowing the victim or having committed the charged crimes, and he pointed out that he had no wounds on his body at the relevant time. Clark stated that DNA analysis of any physical evidence on the knife handle would be material to his identification as the perpetrator of the crimes. In support of his motion, Clark submitted an affidavit from Dr. Robin W. Cotton, an associate professor in the department of anatomy and neurobiology and the director of the biomedical forensic sciences program at Boston University School of Medicine.[12] She opined that "[w]hile the evidence in this case is old, it is possible that upon examination of the knife handle and partial blade by an accredited laboratory, . . . there may be biological material on the handle or the remaining portion of

---

[12] Prior to her employment at Boston University School of Medicine, Dr. Robin W. Cotton was the forensic laboratory director of Cellmark Diagnostics (later Orchid Cellmark), a private laboratory that specializes in providing forensic DNA testing services.

the blade which is from the perpetrator and that could be tested utilizing Y-STR DNA testing."  See note 7, supra.

We have said that the threshold requirement of § 3 (b) (4) is a "modest" one.  Wade, 467 Mass. at 507.  The moving party only needs to present information showing that the forensic or scientific analysis has "the potential to result in evidence that is material to the moving party's identification as the perpetrator of the crime" (emphasis added).  G. L. c. 278A, § 3 (b) (4).  Doctor Cotton opined that, notwithstanding the age of the evidence in this case, it was possible that biological material from the perpetrator was present on the knife handle.[13]

---

[13] The purported absence of visible biological material on the handle of the knife is of no import where such material may consist of skin cells or occult blood, which cannot be seen with the naked eye.  See Commonwealth v. Girouard, 436 Mass. 657, 660 n.3 (2002).  Although the focus of Clark's § 3 motion is DNA analysis of potential blood evidence on the knife handle, we recognize the possibility that DNA from skin cells, so-called "touch DNA" or "trace DNA," may be present on the handle and could have the potential to yield material evidence regarding the perpetrator of the underlying crimes.  In 1997, a scientific journal "reported that DNA profiles could be generated from touched objects.  This opened up possibilities and led to the collection of DNA from a wider range of exhibits (including: tools, clothing, knives, vehicles, firearms, food, bedding, condoms, lip cosmetics, wallets, [jewelry], glass, skin, paper, cables, windows, doors, and stones)."  van Oorschot, Ballantyne, & Mitchell, Forensic Trace DNA:  A Review, 1:14 Investigative Genetics 1, 2 (2010) (Forensic Trace DNA), citing van Oorschot & Jones, DNA Fingerprints from Fingerprints, 387 Nature 767 (June 1997).  "[T]ouched objects provide a wide scope for revealing [an] offender's DNA profile."  Forensic Trace DNA, supra. Although referring to a single term such as "touch DNA" or "trace DNA" may be "a misleading simplification of a series of complex processes," either term can be appropriate "when

The testimony of the victim, coupled with the apparent absence of wounds on Clark's body, could suggest that the victim stabbed someone other than Clark. Testing of the knife handle has the potential to produce a DNA profile that does not match the profile of Clark and, therefore, would be material to the identification of Clark as the perpetrator of the underlying crimes. Whether Clark is likely to obtain such a forensic result "is not relevant to the analysis." Wade, supra at 508. Moreover, the Legislature "did not condition access to [scientific] testing on some degree of proof that the test results will raise doubt about the conviction."[14] Id. at 509. We conclude that Clark met the requirement of § 3 (b) (4).

Fifth, Clark was required to set forth in his motion "information demonstrating that the evidence or biological material has not been subjected to the requested analysis" for

---

referring to the collection of minute biological samples at [a] crime scene or the process of collecting and extracting the tiny amounts of material within the sample in the forensic laboratory." Id. Generally speaking, "trace DNA" refers to either "very limited and/or invisible biological samples" or amounts of DNA that are less than a defined threshold limit. Id. at 3.

[14] We have recognized that "[t]he language of G. L. c. 278A, § 3 (b), sets a far lower bar for access to scientific testing than that required by similar statutes in other States." Wade, 467 Mass. at 509 & n.16.

one of five enumerated reasons.[15]  G. L. c. 278A, § 3 (b) (5).

He correctly stated, in accordance with § 3 (b) (5) (i), that

when he was convicted of the underlying crimes in 1974, DNA

analysis had not yet been developed.  See Commonwealth v.

Curnin, 409 Mass. 218, 221 (1991), and cases cited ("The use of

DNA testing for forensic purposes is of very recent origin").

We conclude that Clark met the requirement of § 3 (b) (5).

Finally, Clark was required to file with his § 3 motion "an

affidavit stating that [he] is factually innocent of the offense

---

[15] General Laws c. 278A, § 3 (b) (5), requires a moving
party to demonstrate that the requested forensic or scientific
analysis has not been performed because

"(i) the requested analysis had not yet been developed at
the time of the conviction;

"(ii) the results of the requested analysis were not
admissible in the courts of the commonwealth at the time of
the conviction;

"(iii) the moving party and the moving party's attorney
were not aware of and did not have reason to be aware of
the existence of the evidence or biological material at the
time of the underlying case and conviction;

"(iv) the moving party's attorney in the underlying case
was aware at the time of the conviction of the existence of
the evidence or biological material, the results of the
requested analysis were admissible as evidence in courts of
the commonwealth, a reasonably effective attorney would
have sought the analysis and either the moving party's
attorney failed to seek the analysis or the judge denied
the request; or

"(v) the evidence or biological material was otherwise
unavailable at the time of the conviction."

of conviction and that the requested forensic or scientific analysis will support the claim of innocence."[16] G. L. c. 278A, § 3 (d). Clark did file such an affidavit in which he asserted that he "did not commit[] the offenses of Unarmed Robbery, Rape, and Kidnapping," and that he was "requesting forensic or scientific testing in this case because [he] believe[s] that the results of this testing will support [his] claim of factual innocence." No more was required under the plain and unambiguous language of the statute. We are cognizant of the fact that the affidavit from Dr. Cotton did not specifically aver that DNA analysis of the knife handle would support Clark's assertion. However, nothing in § 3 (d) requires a moving party to submit with his or her affidavit supporting evidence to substantiate a claim of factual innocence. We conclude that Clark met the requirements of § 3 (d).

Based on our review of Clark's § 3 motion, together with his affidavit of factual innocence and the supporting affidavit of Dr. Cotton, as well as the response from the Commonwealth, we determine that Clark has met all of the threshold requirements set forth in G. L. c. 278A, § 3, for DNA analysis. Given that

---

[16] General Laws c. 278A, § 1, defines "[f]actually innocent" as "a person convicted of a criminal offense who did not commit that offense." Accordingly, "to assert factual innocence, a moving party must assert that he did not commit the offense of which he was convicted." Wade, 467 Mass. at 512.

the judge already has held a hearing on the motion,[17] we proceed to consider whether he properly denied Clark's motion under G. L. c. 278A, § 7, based on his conclusion that Clark did not satisfy § 7 (b) (4) because Clark failed to establish a reasonable possibility that some biological material exists on the knife handle.

General Laws c. 278A, § 7 (b), provides that a judge "shall allow the requested forensic or scientific analysis" if all six enumerated criteria "ha[ve] been demonstrated by a preponderance of the evidence."  See note 5, supra.  Pursuant to § 7 (b) (1), Clark was required to show that "the evidence or biological material exists" (emphasis added).  The word "or" has "a disjunctive meaning unless the context and the main purpose of all the words demand otherwise."  Eastern Mass. St. Ry. v. Massachusetts Bay Transp. Auth., 350 Mass. 340, 343 (1966).  The language of § 7 (b) does not demand, or even suggest, that the Legislature's use of the word "or" to distinguish between "evidence" and "biological material" should be construed as other than disjunctive, thereby identifying two alternative sources for forensic or scientific analysis.  Clark satisfied the terms of § 7 (b) (1) by showing that evidence -- the handle

_____

[17] No witnesses provided testimony at the hearing.  Counsel for Clark and the Commonwealth simply presented their arguments to the judge.

of the knife used to commit the underlying crimes -- exists.  He was not required to also demonstrate the presence of biological material on the knife handle.  Such a construction of the statutory language would undermine its plain and unambiguous terms.  See Commonwealth v. Brown, 431 Mass. 772, 775 (2000) ("When the language of a statute is plain and unambiguous, it must be given its ordinary meaning").

In addition to demonstrating the existence of the knife handle, Clark was required to show that the requested DNA analysis "has the potential to result in evidence that is material to the moving party's identification as the perpetrator of the crime in the underlying case" (emphasis added).  G. L. c. 278A, § 7 (b) (4).  Given his lack of access to the knife handle since his convictions, Clark could not point to any visual evidence of biological material on the handle.  Therefore, he had to rely on the victim's trial testimony where she stated that her assailant "found [a] kitchen knife," he "proceeded to rape [her] with the knife at [her] throat," she eventually "grabbed the knife," she "attempted to stab him in the back," and she struck him in the shoulder, at which point the blade broke off.  This testimony suggests that Clark's request for DNA analysis of the handle has the "potential" to result in evidence -- a DNA profile -- that is material to Clark's identification as the perpetrator of the underlying

crimes. Where the assailant was holding onto the knife for a period of time and the victim believed that she stabbed the assailant in the shoulder, skin cells and blood may be present on the handle. See note 13, supra. The Legislature's use of the word "potential" in § 7 (b) (4) suggests an awareness of the fact that the requested forensic analysis may not produce the desired evidence, but such a consequence should not be an impediment to analysis in the first instance. Given its compelling interest in remedying wrongful convictions of factually innocent persons, the Legislature intended to permit access to DNA testing "regardless of the presence of overwhelming evidence of guilt in the underlying trial." Wade, 467 Mass. at 511. As such, it is entirely appropriate that we construe the language of G. L. c. 278A, § 7 (b), in a manner that is generous to the moving party.

We conclude that the judge erred in determining that Clark failed to satisfy his burden of demonstrating the requirements of G. L. c. 278A, § 7 (b) (1) and (4). Based on his decision regarding these two statutory provisions, the judge did not consider the remaining criteria of § 7 (b). See note 5, supra. Pursuant to § 7 (a), a judge "shall state findings of fact and conclusions of law on the record, or shall make written findings of fact and conclusions of law that support the decision to

allow or deny a motion brought under [§] 3."[18]  See Wade, 467 Mass. at 503.  We have no such findings and conclusions concerning whether Clark satisfied his burden of proof with respect to § 7 (b) (2), (3), (5), and (6).  Mindful of our rationale for analyzing the criteria set forth in G. L. c. 278, § 3, we similarly could consider whether Clark satisfied those particular requirements of § 7 (b) that can be demonstrated through documentary materials.  See, e.g., G. L. c. 278A, § 7 (b) (3), (5), (6).  However, the matter of whether Clark satisfied § 7 (b) (2) stands on different footing.  A dispute exists between the parties as to whether "the evidence or biological material has been subject to a chain of custody that is sufficient to establish that it has not deteriorated, been substituted, tampered with, replaced, handled or altered such that the results of the requested analysis would lack any probative value," § 7 (b) (2), and the judge made no findings to

---

[18] As we have stated, a judge shall allow forensic or scientific analysis only in those cases where a moving party has demonstrated, by a preponderance of the evidence, all six criteria set forth in G. L. c. 278A, § 7 (b).  We recognize that where a judge determines that a moving party has failed to satisfy one of these criteria, the language of § 7 (a) could be construed as only requiring findings of fact and conclusions of law relating to that one criterion.  In our view, however, § 7 (a) is better read as requiring a judge to articulate findings of fact and conclusions of law on all six criteria in every decision made on a motion filed pursuant to G. L. c. 278A. By so doing, a judge will facilitate proper appellate review, when sought, without the necessity of a remand for further proceedings, thereby promoting judicial economy and efficiency.

resolve the dispute. He simply did not consider whether DNA analysis of the knife handle "would lack <u>any</u> probative value" due to deterioration or handling of the evidence over time (emphasis added). G. L. c. 278A, § 7 (<u>b</u>) (2). We have said that "[a]ppellate courts may supplement a judge's finding of facts if the evidence is uncontroverted and undisputed and where the judge explicitly or implicitly credited the witness's testimony." <u>Commonwealth</u> v. <u>Isaiah I</u>., 448 Mass. 334, 337 (2007), <u>S.C</u>., 450 Mass. 818 (2008). However, that is not the situation presented here. Accordingly, we remand this matter to the Superior Court for the requisite findings of fact and conclusions of law regarding whether Clark has demonstrated by a preponderance of the evidence the requirements of § 7 (<u>b</u>) (2), (3), (5), and (6).

4. <u>Discovery under G. L. c. 278A</u>. Finally, we consider whether the judge properly denied Clark's request for discovery regarding a pair of men's socks. Clark contends that, contrary to the judge's conclusion, he was not required to demonstrate either that there was a causal connection between the socks and the assailant, or that such evidence would be exculpatory. He further contends that the judge improperly and prematurely analyzed his request for discovery under G. L. c. 278A, § 7, rather than under G. L. c. 278A, § 3. In Clark's view, the allowance of discovery pertaining to the socks is necessary

before he can satisfy any burden of proof as to their evidentiary value.

General Laws c. 278A, § 3 (c), provides that if, at this threshold stage, a moving party is unable to file with the motion "any of the items or information" required under § 3 (b), or "lacks items or information necessary to establish any of the factors" set forth in § 7 (b), then the moving party may seek "discovery of such items or information from the prosecuting attorney or any third party" and "shall include a description of efforts made to obtain such items and information." See Wade, 467 Mass. at 504. Here, Clark stated in his § 3 motion that Detective Farrell recovered from the victim's apartment a pair of men's socks. He further stated that the current location of the socks was unclear, and that he was entitled to discovery to ascertain their location and then pursue DNA testing. Because Clark failed to describe in his § 3 motion any efforts that he made to obtain the socks, we conclude that Clark did not meet the requirements of § 3 (c).

Had he done so, then the judge would have considered whether to authorize discovery pursuant to § 7 (c). "Such discovery may include items and biological materials from third parties, provided the party seeking discovery demonstrates that analysis of these items or biological material will, by a preponderance of the evidence, provide evidence material to the

identification of a perpetrator of the crime."  G. L. c. 278A,
§ 7 (c).  Further, if a judge finds "good cause" for a moving
party's "inability to obtain items or information required
under" §§ 3 (b) and 7 (b), then the judge can "order discovery
to assist the moving party in identifying the location and
condition of evidence or biological material that was obtained
in relation to the underlying case, regardless of whether it was
introduced at trial or would be admissible."  Id.  Here, in his
memorandum of decision, the judge stated that the testimony of
Detective Farrell, by itself, was insufficient to show that
there was a connection between the socks and the perpetrator,
much less that the evidence had the potential to exculpate
Clark.  The judge pointed out that the record did not indicate
that the socks once belonged to, or were ever touched by, the
victim's assailant.  Consequently, the judge concluded that
Clark failed to satisfy his burden of demonstrating that
searching for and analyzing the socks would provide evidence
material to the identification of the perpetrator of the
underlying crimes.  We do not disagree with the judge's
conclusion.  Clark's request for discovery pertaining to the
socks was properly denied.[19]

---

    [19] In the event that Clark obtains new information about the
location and evidentiary significance of the socks, he is not
foreclosed from filing another motion for discovery pursuant to
the terms of G. L. c. 278A, § 3 (c).

5.  Conclusion.  The judge's order denying Clark's § 3 motion is reversed, except insofar as it denied Clark's request for discovery.  We remand this case to the Superior Court for further proceedings consistent with this opinion.

So ordered.