NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-13713

COMMONWEALTH  vs.  PIERRE P. CADET.


Plymouth.       January 5, 2026. - June 24, 2026.

Present:  Budd, C.J., Kafker, Wendlandt, Georges, Dewar,
& Wolohojian, JJ.


Homicide.  Deoxyribonucleic Acid.  Evidence, Scientific test,
    Relevancy and materiality, Presumptions and burden of
    proof, Consciousness of guilt.  Practice, Criminal,
    Presumptions and burden of proof, Postconviction relief.
    Self-Defense.



Indictment found and returned in the Superior Court
Department on December 17, 2004.

Following review by this court, 473 Mass. 173 (2015),
postconviction motions for forensic testing, filed on July 1 and
November 8, 2022, were heard by William F. Sullivan, J.

A request for leave to appeal was allowed by Wendlandt, J.,
in the Supreme Judicial Court for the county of Suffolk.


Merritt Schnipper for the defendant.
Arne Hantson, Assistant District Attorney, for the
Commonwealth.


DEWAR, J.  The defendant, Pierre P. Cadet, was convicted of

murder in the first degree for killing Betina Francois.

Following this court's affirmance of the conviction, the defendant filed a motion in the Superior Court under G. L. c. 278A, seeking, among other things, deoxyribonucleic acid (DNA) testing of the handles of two knives and a bleach bottle found at the scene.  The defendant sought this testing to support his contention that he acted lawfully in self-defense after the victim attacked him with the knives and to rebut evidence that, conscious of his own guilt, he attempted to clean the scene.  The motion judge, who was not the trial judge, denied the motion for failure to make a preliminary showing that the requested testing had the potential to result in material evidence, as required to obtain a hearing on the motion.  See G. L. c. 278A, §§ 3 (b) (4), 6 (a).  Concluding that the defendant did meet this initial requirement with respect to the requested DNA testing of the knife handles and bleach bottle, we reverse in part the denial of the defendant's motion and remand the matter for a hearing under G. L. c. 278A, § 7.

1.  Background.  We summarize the facts set forth in Commonwealth v. Cadet, 473 Mass. 173, 174-178 (2015), and the memorandum of decision denying the defendant's motion under G. L. c. 278A, § 3.

The defendant and the victim had been in a romantic relationship for three years when the defendant killed the victim on September 26, 2004.  The couple generally resided

together in an apartment in Brockton that they had purchased, but they had numerous arguments and at times lived apart. In early 2004, the victim obtained an abuse prevention order against the defendant after he shoved and hit her, but their relationship continued. In the summer of 2004, the victim's family observed injuries on her face and body and helped her change the locks to the shared apartment and remove the defendant's belongings. The defendant repeatedly tried to break into the apartment and was charged with violating the abuse prevention order. The victim later allowed him to return to the apartment.

On September 26, 2004, neighbors observed the defendant and the victim enter the apartment at 5 P.M. At approximately 7:30 P.M., neighbors heard the victim speaking in an "irritated" voice, saying, among other things, that she was "not going to take this bullshit anymore" and then, repeatedly, "Leave me alone." Ten minutes later, loud music began playing from the apartment. Shortly thereafter, a neighbor observed the victim's vehicle back out of the driveway quickly.

At approximately 9 P.M., the defendant, driving the victim's vehicle over one hundred miles per hour, crashed in a single-vehicle accident in Rhode Island. At the emergency room where he was taken for treatment, medical personnel observed multiple wounds that appeared to have been caused by a knife

rather than the motor vehicle accident, including at least two injuries to his neck, a wound in his stomach, and a wound on his left palm.

The following morning, Brockton police conducted a well-being check at the couple's apartment and found the victim's body on the couch with nine stab wounds, at least four of which could have been fatal. Police found a bloody knife blade on the floor near the couch, a knife handle on the couch, and an unbroken knife in a crevice in the couch. Near the couch were a white bleach bottle and several towels. Police also discovered a note from the defendant. It stated that the victim had called the defendant while he was driving home and asked him to come to the apartment, where she then began arguing with him and threatening to call the police. It further stated that the victim and her family were trying to destroy his life, that he had "had enough," that he did not deserve to be in prison, and that his life was "already over."

In 2007, a jury convicted the defendant of murder in the first degree. At trial, the Commonwealth's experts testified that testing conducted on the blood found on the knives and elsewhere in the living room showed that the blood contained DNA from both the victim and the defendant. The defendant's DNA also was present in bloodstains on the kitchen floor and the dining room table.

The defendant testified in his own defense.  He stated that upon arriving at the apartment, the victim wanted to talk about their relationship, but the defendant wanted to work on a paper for one of his college courses.  The victim became angry and threatened to call the police.  The defendant started to leave the apartment, but the victim attempted to stop him, swung a knife at him, and cut his neck.  The victim then "came at him" swinging two knives and began stabbing him.  He pushed her onto the couch and was able to grab one of the knives.  He then repeatedly stabbed her until she stopped stabbing him.  The defendant testified that he attempted to clean blood from the carpet, wrote the note, and then departed in the victim's vehicle, intending to travel to friends in New York.

In 2015, this court affirmed the defendant's conviction and the denial of his motion for a new trial.  Cadet, 473 Mass. at 174.  The unsuccessful motion for a new trial claimed in part that the defendant was deprived of effective assistance of counsel because his trial counsel failed to pursue independent forensic analysis of the crime scene, including the recovered knives, to support his claim of self-defense or imperfect self-defense.  See id. at 185.

In 2022, the defendant filed a pro se motion for postconviction access to forensic and scientific analysis under

G. L. c. 278A, § 3.[1]  His motion requested, among other relief, that "handler" DNA testing[2] be conducted on the knife handles and bleach bottle found at the scene.[3]  He argued that this testing would corroborate his claim that the victim attacked him first with both knives and would show that, contrary to his own testimony at trial, he did not attempt to clean up the scene.  In support, he filed an affidavit averring, among other things, that he acted in self-defense in response to the victim's attack with the two knives, and that he falsely testified to attempting to clean the scene at the urging of his trial counsel.  The motion judge denied the motion on the ground that the defendant had failed to provide information demonstrating the potential materiality of the requested analyses.  The defendant filed a

---

[1] The defendant filed an initial motion on July 1, 2022, and then an amended motion four months later that, as the motion judge noted, largely duplicated the original motion.

[2] Handler DNA testing involves swabbing "an entire area to determine if any nonvisible DNA may be collected from locations where an item is typically handled," Commonwealth v. Cassino, 474 Mass. 85, 93 (2016), and can reveal the identity of someone who touched the object, see Commonwealth v. Linton, 483 Mass. 227, 236 (2019).

[3] The Commonwealth has not raised any dispute as to the availability of this material for testing; experts at the defendant's trial testified that the portions of the two knives not covered in blood and the bleach bottle were swabbed for possible recovery of handler DNA, but the swabs were not tested. And, contrary to a passing assertion in the Commonwealth's brief, the defendant's pro se motion expressly requested handler DNA testing of all three items, including the bleach bottle.

timely notice of appeal and an application for leave to appeal to this court pursuant to G. L. c. 278, § 33E, which a single justice allowed.

2. Discussion. On appeal, the defendant argues that the judge erred in denying his motion under G. L. c. 278A, § 3, with respect to his requests for handler DNA testing of the two knife handles and bleach bottle found at the scene of the killing. We review de novo the question whether a moving party met the threshold requirements for obtaining postconviction forensic or scientific analysis under G. L. c. 278A, § 3. Commonwealth v. Moffat, 478 Mass. 292, 298 (2017), S.C., 486 Mass. 193 (2020).

a. Statutory framework. Chapter 278A delineates a two-step procedure for requesting postconviction forensic and scientific analysis. "First, a threshold determination is made by the court in which the conviction was entered as to whether the motion meets the preliminary criteria set forth in G. L. c. 278A, § 3." Commonwealth v. Wade, 467 Mass. 496, 501 (2014), S.C., 475 Mass. 54 (2016). If the motion judge determines that those criteria are met, "a hearing 'shall' be conducted pursuant to G. L. c. 278A, §§ 6 and 7, to determine whether [the] petitioner has established by a preponderance of the evidence sufficient facts . . . to order DNA testing or further discovery." Id. Here, we are concerned only with the threshold

determination of whether the defendant's motion met the
preliminary criteria in G. L. c. 278A, § 3.

General Laws c. 278A, § 3 (b), requires a person seeking
relief to present by way of motion five categories of
information, including, as we shall discuss in greater detail,
information showing that the requested analysis has the
potential to result in material evidence.  See Wade, 467 Mass.
at 502 & n.9, citing G. L. c. 278A, § 3 (b).[4]  The motion also

---

[4] In full, G. L. c. 278A, § 3 (b), requires the motion to
include the following:

"(1) the name and a description of the requested forensic
or scientific analysis;

"(2) information demonstrating that the requested analysis
is admissible as evidence in courts of the commonwealth;

"(3) a description of the evidence or biological material
that the moving party seeks to have analyzed or tested,
including its location and chain of custody if known;

"(4) information demonstrating that the analysis has the
potential to result in evidence that is material to the
moving party's identification as the perpetrator of the
crime in the underlying case; and

"(5) information demonstrating that the evidence or
biological material has not been subjected to the requested
analysis because:

"(i) the requested analysis had not yet been developed at
the time of the conviction;

"(ii) the results of the requested analysis were not
admissible in the courts of the commonwealth at the time of
the conviction;

must, "when relevant, . . . include specific references to the record in the underlying case or to affidavits [based on personal knowledge] that are filed in support of the motion." G. L. c. 278A, § 3 (b).

In addition, the movant must provide an affidavit "stating that [he or she] is factually innocent of the offense of conviction and that the requested forensic or scientific analysis will support the claim of innocence." G. L. c. 278A, § 3 (d). A movant's claim that a homicide was justified because it was committed in self-defense is, for the purpose of meeting this requirement, a claim that the movant is factually innocent of the offense of murder in the first degree. Commonwealth v. Williams, 481 Mass. 799, 806 (2019).

At this threshold stage under G. L. c. 278A, § 3, the movant "is only required to point to the existence of specific

---

"(iii) the moving party and the moving party's attorney were not aware of and did not have reason to be aware of the existence of the evidence or biological material at the time of the underlying case and conviction;

"(iv) the moving party's attorney in the underlying case was aware at the time of the conviction of the existence of the evidence or biological material, the results of the requested analysis were admissible as evidence in courts of the commonwealth, a reasonably effective attorney would have sought the analysis and either the moving party's attorney failed to seek the analysis or the judge denied the request; or

"(v) the evidence or biological material was otherwise unavailable at the time of the conviction."

information that satisfies the statutory requirements and need not make an evidentiary showing by a preponderance of the evidence" (citation and quotation omitted).  Commonwealth v. Clark, 472 Mass. 120, 130 (2015).  See, e.g., Wade, 467 Mass. at 503, quoting G. L. c. 278A, § 3 (d) (moving party's guilty plea or incriminating statement "is not a basis upon which a motion judge may find 'that identity was not or should not have been a material issue in the underlying case'").  Accordingly, the judge "is not called upon to make credibility determinations, or to consider the relative weight of the evidence or the strength of the case presented against the moving party at trial" (citation omitted).  Clark, supra at 124-125.  In sum, at this preliminary stage, "the movant's burden is low."  Williams, 481 Mass. at 804.

b.  Defendant's motion.  The sole ground on which the defendant's motion was denied at the preliminary stage under G. L. c. 278A, § 3, and the sole ground on which the Commonwealth defends that decision, is that the defendant failed to make the required preliminary showing of materiality under G. L. c. 278A, § 3 (b) (4).  The defendant argues on appeal that he did make this showing, because handler DNA testing of the knife handles and bleach bottle could corroborate his claim that he acted lawfully in self-defense.

With respect to materiality, the statute requires a movant to include "information demonstrating that the analysis has the potential to result in evidence that is material to the moving party's identification as the perpetrator of the crime." G. L. c. 278A, § 3 (b) (4). We have interpreted the phrase "evidence that is material" to mean "evidence that is of significance 'to the moving party's identification as the perpetrator of the crime in the underlying case'" (emphasis added). Commonwealth v. Ramos, 490 Mass. 818, 825 (2022), quoting G. L. c. 278A, § 7 (b) (4).[5] And the analysis need only have the "potential" to yield material evidence. G. L. c. 278A, § 3 (b) (4). Accordingly, "[t]o meet this requirement, the moving party need only show that the requested analysis could be material . . . and not whether it would have had any effect on the underlying

---

[5] As the motion judge noted, Ramos arose following a hearing under G. L. c. 278A, § 7, at which the defendant had sought to meet that provision's requirement that he demonstrate by a preponderance of the evidence "that the requested analysis has the potential to result in evidence that is material to the moving party's identification as the perpetrator of the crime in the underlying case," G. L. c. 278A, § 7 (b) (4). See Ramos, 490 Mass. at 819. Because the Legislature used identical language in establishing the materiality requirement at the preliminary § 3 stage under G. L. c. 278A, § 3 (b) (4), we agree with the motion judge's conclusion that our interpretation in Ramos of the phrase "evidence that is material" also applies at the preliminary § 3 stage. See Commonwealth v. Connor C., 432 Mass. 635, 645 (2000) ("Absent some contrary indication in the statute, the same words used in different parts of a statute enacted at the same time should receive the same meaning").

conviction" (quotations and citation omitted).  Commonwealth v. Steadman, 489 Mass. 372, 389 (2022).  See Wade, 467 Mass. at 509 (Legislature "did not condition access to [scientific] testing on some degree of proof that the test results will raise doubt about the conviction").

Where, as here, the factual innocence claim is that the defendant acted in lawful self-defense, the defendant's threshold burden is to demonstrate that the requested testing "has the potential to result in evidence that is material to proving that no crime occurred."  Williams, 481 Mass. at 809 n.11.  See, e.g., Ramos, 490 Mass. at 826.  In such cases, the testing need not have the potential to identify a third-party culprit, so long as it could be material to showing that the defendant acted lawfully.  See Williams, supra at 807-808 ("nothing in the plain language of G. L. c. 278A, § 3 [b] [4], indicates that the Legislature intended to limit requests under the chapter to cases in which the movant alleges that someone else . . . committed the crime").

The defendant's motion requesting handler DNA testing of the knife handles and bleach bottle recovered at the scene met this threshold burden.  With respect to the knife handles, the requested DNA testing has the potential to provide evidence corroborating the defendant's claim that the victim acted as the first aggressor, attacking him with both knives in their living

room, before he wrestled one of the knives away from her and stabbed her in a lawful attempt to defend himself. Cf. Commonwealth v. Chambers, 465 Mass. 520, 528 (2013) (describing significance of first aggressor under common law of self-defense). Among other possibilities, the testing could yield results showing the victim's handler DNA to be present on both knives and the defendant's DNA on only one knife. Such results "would tend to support the defendant's self-defense claim" that the victim acted as first aggressor by bringing both knives to the scene and that he handled only one of the two knives after taking it from her. Ramos, 490 Mass. at 827. The defendant thus has "show[n] that the DNA evidence he seeks might be used to bolster [his] testimony [at trial] . . . and to challenge the Commonwealth's account of the sequence of events." Id. at 828.

We are not persuaded by the Commonwealth's various arguments to the contrary, which are inconsistent with the defendant's "modest" burden at this preliminary stage. Clark, 472 Mass. at 132, quoting Wade, 467 Mass. at 507. The Commonwealth urges us to consider the other evidence against the defendant and argues that for several reasons the knives were likely to have the victim's DNA on them regardless of whether she was the first aggressor. These arguments go to the "relative weight of the evidence," however, which is not a permissible consideration. Clark, supra at 124-125. See

Steadman, 489 Mass. at 390. The Commonwealth also argues that the defendant's materiality theory relies on an assumption that all handler DNA would have been deposited prior to the stabbing and that the defendant has not provided "a scientific foundation or any attestation of an expert" to support this assumption. But the defendant was not required to "prove anything" at this stage; the statute required only that he "furnish some quantum of information" that the testing had the potential to result in material evidence. Steadman, supra at 392. This he did.

The defendant also met his burden on materiality with respect to testing of the bleach bottle for handler DNA. At trial, the Commonwealth relied in part on evidence of the defendant's consciousness of guilt to prove that he did not act lawfully in self-defense. See Cadet, 473 Mass. at 177-178. See also Commonwealth v. Porter, 384 Mass. 647, 653 (1981) (while alone insufficient for conviction, evidence of consciousness of guilt "when coupled with other probable inferences may be sufficient"). One piece of that evidence was the defendant's testimony that, after the killing, he attempted to clean the scene. The defendant now avers, however, that he did not attempt to clean the scene and that his trial counsel coerced him to testify falsely on this point because, in counsel's view, there was no other explanation for the presence of the bleach bottle. By pointing to these circumstances, the defendant's

motion provided at least "some quantum of information" demonstrating that testing the bleach bottle for handler DNA too has the potential to result in material evidence. Steadman, 489 Mass. at 392. A negative test for the defendant's handler DNA would support his claim that he did not attempt to clean the scene as a result of a guilty conscience and thereby would detract from the circumstantial evidence that he did not act lawfully in self-defense. See Ramos, 490 Mass. at 827 (DNA evidence, alone or in combination with other evidence, need only support self-defense claim and need not "directly" determine identity of first aggressor). Cf. Commonwealth v. Adjutant, 443 Mass. 649, 658-659 (2005) (emphasizing jury's need for "all the available facts" where, "as is often the case where self-defense is raised," evidence is "incomplete" [citation omitted]). We do not mean to suggest that evidence detracting from consciousness of guilt always is potentially material under G. L. c. 278A, § 3 (b) (4), but the defendant met his threshold burden in the circumstances of this case.

We are unpersuaded by the Commonwealth's arguments that the defendant has not made the modest showing of potential materiality required under G. L. c. 278A, § 3 (b) (4). Citing cases decided in the context of motions for a new trial under Mass. R. Crim. P. 30 (b), as appearing in 435 Mass. 1501 (2001), see, e.g., Commonwealth v. Lopez, 426 Mass. 657, 662 (1998), the

Commonwealth contends that the motion judge correctly discredited the defendant's affidavit on various grounds, including the absence of a corroborating affidavit from trial counsel.  However, as discussed, under the distinct statutory framework of c. 278A, a judge at the § 3 stage "is not called upon to make credibility determinations."  Clark, 472 Mass. at 124-125, quoting Wade, 467 Mass. at 505.  The Commonwealth also argues that any handler DNA testing conducted on the bleach bottle would not be "of significance" in light of the other evidence of consciousness of guilt presented at trial, Ramos, 490 Mass. at 825, including the defendant's note and flight as well as other physical evidence that at least "someone" had attempted to clean the scene.  But, again, a judge also "is not called upon to . . . consider the relative weight of the evidence or the strength of the case presented against the moving party at trial" under G. L. c. 278A, § 3 (citation omitted).  Clark, supra.  The defendant here has succeeded in providing information sufficient to "clear § 3's low bar," Steadman, 489 Mass. at 392, and thus to obtain a hearing, see G. L. c. 278A, § 6 (a).  On remand, he will face the greater burden of demonstrating by a preponderance of the evidence that the requested testing has the potential to result in material evidence.  See G. L. c. 278A, § 7 (b) (4).

3.  Conclusion.  The order denying the defendant's motion under G. L. c. 278A, § 3, is reversed insofar as it denied the motion with respect to the requested handler DNA testing of the knife handles and bleach bottle.  The case is remanded to the Superior Court for a hearing pursuant to G. L. c. 278A, § 7.

So ordered.