NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

14-P-1660                                            Appeals Court


COMMONWEALTH  vs.  MARIE E. LYONS.


No. 14-P-1660.

Plymouth.      December 9, 2015. - June 6, 2016.

Present:  Green, Vuono, & Meade, JJ.


Deoxyribonucleic Acid.  Practice, Criminal, Postconviction
    relief, Discovery.  Evidence, Chain of custody, Scientific
    test, Relevancy and materiality.



    Indictment found and returned in the Superior Court
Department on November 5, 2001.

    A postconviction motion for access to untested evidence,
filed on September 10, 2012, was heard by Linda E. Giles, J.,
and a motion for reconsideration, filed on August 18, 2014, was
considered by her.


    Sara J. van Vliet (Nicholas J. Ramacher with her) for the
defendant.
    Gail M. McKenna, Assistant District Attorney, for the
Commonwealth.

VUONO, J.  The defendant, Marie E. Lyons, is serving a life sentence for the murder in the second degree of Gerard Charron.[1] She appeals from the denial of her postconviction motion, brought pursuant to G. L. c. 278A, § 3 (§ 3 motion), in which she sought access to biological evidence for the purpose of conducting deoxyribonucleic acid (DNA) testing.  The key evidence consists of two strands of hair, one found in each of the victim's hands when his body was discovered.  The primary issue raised is whether Lyons is entitled to discovery regarding the current location and condition of the evidence and documentation of the chain of custody of the hair.  For the reasons that follow, we conclude that Lyons's request for discovery should have been allowed and, therefore, we vacate the order denying the § 3 motion and remand the matter to the Superior Court for additional proceedings.

Background.  1.  Facts.  The jury that convicted Lyons in 2004 could have found the following facts.  Lyons and Charron had been dating for about four months before Charron was killed. The couple were homeless and camping in a public park in Brockton on September 12, 2001, when, shortly before 1:00 A.M., the police received four 911 calls.  One of the callers, who

---

[1] We affirmed the conviction in an unpublished decision pursuant to our rule 1:28, and the Supreme Judicial Court denied further appellate review.  See Commonwealth v. Lyons, 70 Mass. App. Ct. 1109 (2007), S.C., 450 Mass. 1108 (2008).

lived nearby, testified at trial that at the time he heard loud voices coming from the park; the loudest voice, that of a woman, said, "Oh, my God, what have I done." An emergency medical technician arrived at the scene shortly thereafter and found the body of the victim on a blanket, completely covered except for the top of his head. The cause of death was sharp force and blunt force head trauma inflicted by a sharp instrument. Lyons was alone at the scene, upset and crying, when the police arrived a few minutes later. She had blood on her hands, clothing, and sneakers. The Commonwealth's expert opined that blood spatter on Lyons's clothing was created by cast-off blood from a weapon used to stab Charron in the head. No weapon was recovered.

When Charron's body was examined, a strand of hair was retrieved from each of his hands. Although the hair was available for scientific and forensic analysis before trial, neither the Commonwealth nor Lyons conducted any testing. The two strands of hair and a known hair sample from the victim's head were introduced in evidence as exhibits 71-73 by defense counsel at the conclusion of the defense's case.[2] In his closing argument, defense counsel attempted to persuade the jury that DNA testing of the hair would have identified the murderer and

---

[2] The evidence had been in the possession of the Commonwealth and was introduced without objection to its chain of custody.

that the Commonwealth's failure to test the hair established reasonable doubt.[3]

2. The § 3 motion. Lyons's § 3 motion asserted her factual innocence of the crime and that evidence of hair belonging to a third party in the victim's hands would be strong evidence of her innocence and would help identify the actual perpetrator. In her affidavit submitted in support of the motion, Lyons claimed that she was unaware that the strands of hair existed until the evidence was discussed in court during her trial and that, if she had known about the hair, she would have requested that DNA testing be conducted prior to trial.[4] The affidavit also set forth Lyons's postconviction efforts to obtain access to the evidence. She specifically averred that the "State [p]olice ha[ve] refused to provide any information concerning the present location or condition of any of the evidence concerning my case."

An affidavit from one of the attorneys representing Lyons in connection with her motion stated that Lyons's trial counsel "reported that he had no information concerning the location or

---

[3] The Commonwealth in turn argued to the jury that they should infer the hair had come from the victim, referring to testimony of an experienced detective that victims of head attacks often grab at their own heads as they attempt to ward off blows.

[4] Lyons also claimed that trial counsel was ineffective for failing to request DNA testing of the hair.

condition of any physical evidence in this case, including the hair evidence."  Motion counsel also averred that one of the assistant district attorneys who tried the case (the ADA[5]) had informed him that the Commonwealth also "was unaware of the location or condition of the physical evidence in this case."[6] The § 3 motion specifically requested discovery regarding the current location of the evidence and documentation of the chain of custody of the hair.  See G. L. c. 278A, § 3(c).

The § 3 motion was reviewed by the trial judge, who determined that Lyons had satisfied the statute's threshold requirements, see G. L. c. 278A, § 3(e), but the judge did not address Lyons's request for discovery.  As required by the statute, the Commonwealth was given sixty days to respond to Lyons's motion.  See G. L. c. 278A, § 4(b).  That response came in the form of a motion to dismiss in which the Commonwealth claimed that the "statute does not provide for the routine testing or retesting for analysis of alleged biological materials that were readily available to a defendant at [the] time of trial."  The Commonwealth next argued that the evidence against Lyons was strong and, because neither the prosecution

---

[5] There were two assistant district attorneys who prosecuted the case at trial, but only one of the two was involved with the § 3 motion.  We refer to her as the ADA for convenience.

[6] We note that the Commonwealth has contested this allegation.

nor trial counsel "ever suggested that the hair belonged to the defendant," the results of DNA testing would have no probative value. The Commonwealth pointed out that trial counsel had made a tactical decision not to test the hair and had argued "vigorously" in closing that Lyons should be acquitted because the Commonwealth failed to conduct DNA testing. The Commonwealth further asserted that the jury were able to physically inspect the two strands of hair and the victim's hair sample and would have known that Lyons had shoulder length blonde hair and that the victim had short darker hair. Thus, the Commonwealth claimed that the jury could have concluded on their own whether the hair in question belonged to a third party.

3. <u>The hearing</u>. The trial judge held a hearing on the § 3 motion on February 12, 2014.[7] During the course of the hearing,

---

[7] After a defendant has succeeded in meeting the minimum threshold requirements of § 3, the defendant is entitled to an evidentiary hearing. See G. L. c. 278A, § 6. To obtain the requested forensic or scientific analysis, she must meet her burden in establishing by a preponderance of evidence the matters set out in G. L. c. 278A, § 7(<u>b</u>), inserted by St. 2012, c. 38:

> "(1) that the evidence or biological material exists;

> "(2) that the evidence or biological material has been subject to a chain of custody that is sufficient to establish that it has not deteriorated, been substituted, tampered with, replaced, handled or altered such that the results of the requested analysis would lack any probative value;

at which Lyons was present, a dispute arose regarding the chain of custody of the hair. The dispute centered upon two things: the current location of the evidence and the condition of the exhibits. It can be inferred from the record that, upon the conclusion of the trial, all of the evidence, including exhibits 71-73, remained in the office of the Superior Court clerk for Plymouth County for six years before being returned to the State

---

"(3) that the evidence or biological material has not been subjected to the requested analysis for any of the reasons in [§ 3(b)(5)(i)-(v): i.e., (i) the requested analysis had not yet been developed at the time of the conviction; (ii) the results of the requested analysis were not admissible in the courts of the Commonwealth at the time of the conviction; (iii) the moving party and the moving party's attorney were not aware of and did not have reason to be aware of the existence of the evidence or biological material at the time of the underlying case and conviction; (iv) the moving party's attorney in the underlying case was aware at the time of the conviction of the existence of the evidence or biological material, the results of the requested analysis were admissible as evidence in courts of the Commonwealth, a reasonably effective attorney would have sought the analysis and either the moving party's attorney failed to seek the analysis or the judge denied the request; or (v) the evidence or biological material was otherwise unavailable at the time of the conviction];

"(4) that the requested analysis has the potential to result in evidence that is material to the moving party's identification as the perpetrator of the crime in the underlying case;

"(5) that the purpose of the motion is not the obstruction of justice or delay; and

"(6) that the results of the particular type of analysis being requested have been found to be admissible in courts of the commonwealth."

police in 2010. At the time of the hearing, the ADA "presume[d]" that the evidence was in a storage room maintained by the State police.[8] However, prior to the hearing, no one involved had actually seen any of the evidence since the trial, including exhibits 71-73. Motion counsel for Lyons[9] had no access to the evidence because the judge had not ruled upon Lyons's motion for discovery, which included a request to view the exhibits. The ADA had not looked at the evidence because, as the ADA stated, "I'm not going near it while it's under litigation for obvious reasons."

The second area of dispute concerned the condition of the envelopes containing the strands of hair when they were sent to the jury room. According to the ADA, at trial the hairs were in small manila envelopes that the jurors could open. Thus, the ADA argued, even if the evidence could be located, the chain of custody had been broken by virtue of the fact that the hair was available for inspection by the jury. The judge pursued this

---

[8] The ADA stated, "Then at [the] end of trial it's in wher[e]ver the Court put it for about six years before the [S]tate police go and pick it up and put it in the [S]tate police storage room." Later in the hearing, the ADA added, "According to the docket[,] in 2010[,] the Superior Court returned [the exhibits] to the [S]tate police. So I presume that they are in a box in an evidence locker. Presume. I'm not warranting anything about the evidence."

[9] There were two attorneys representing Lyons at the hearing, but for convenience we treat them as one in our discussion.

point with Lyons's motion counsel and asked, "Even if we obtain those envelopes[,] how can anybody be sure [w]hat the content[] of those envelopes is right now?"  Counsel responded, "I would have to know more about the envelopes and about the evidence, which I can't do as we stand procedurally without access to them."

The judge returned to this issue later in the hearing, noting that, at this point, the envelopes could contain the hair of a juror.  Motion counsel acknowledged that could be true, after which the following exchange ensued:

> The court:  "Let's not forget or gloss over . . . that very important issue.  How do I get around that[,] [motion counsel]?  These envelopes were sent up to the jury in Brockton and I have a very, very vague recollection that they were in small manila envelopes and I don't think they were sealed."

> Motion counsel:  "They were sealed."

> The court:  "They were sealed?"

> Motion counsel:  "Yes."

> The ADA:  "No, they were not, your Honor."

> The court:  "[H]ow do you know they weren't sealed -- they were sealed?"

> The ADA:  "I remember specifically they weren't sealed because in looking at the evidence I remember one of the [S]tate police troopers going like this with [one of] the envelope[s] (indicating) when we were over in the DA's office.  I just remember that.  I don't remember what was inside, I just remember those envelopes and him going like this and just pinching it open.  So it wasn't sealed if he pinched it open and was looking inside.  But I do remember that."

The judge subsequently stated that she "certainly accept[ed] [the ADA's] representation," to which motion counsel responded that, "at the very least," Lyons was entitled to discovery on the chain of custody and "entitled to some discovery on exactly what was in [the envelopes] rather than people's memories from 2004."

Ultimately, given the uncertainty involving the chain of custody of the hair evidence, the judge gave motion counsel additional time to supplement the § 3 motion.  The judge said, "It seems to me it would be incumbent on [Lyons] to say that th[ose] envelope[s] [containing the strands of hair] eventually w[ere] sealed when [they] went up to the jury room and came back sealed."  She added, "[T]ake as much time as you need . . . . Either you're going to tell me I have no further supplementation or here is my supplementation."  By letter dated April 25, 2014, motion counsel declined the opportunity to supplement the presentation.  The letter stated, "At this time, Ms. Lyons has determined that she will not supplement her motion . . . and she rests on her motion and briefs as filed. . . .  Ms. Lyons notes that she does not accept [the ADA's] representation at oral argument that the envelopes containing the hairs 'weren't sealed.'"  Lyons later filed a more detailed motion for

discovery, citing G. L. c. 278A, §§ 3(c) & 7(c);[10] however, as far as we can discern from the record, no action has been taken on the motion.

_____

[10] General Laws c. 278A, § 3(c), inserted by St. 2012, c. 38, provides:

"If the moving party is unable to include for filing with the motion any of the items or information described in [§ 3(b)], or if the moving party lacks items or information necessary to establish any of the factors listed in [§ 7(b)], the moving party shall include a description of efforts made to obtain such items and information and may move for discovery of such items or information from the prosecuting attorney or any third party."

General Laws c. 278A, § 7(c), inserted by St. 2012, c. 38, provides:

"The court on motion of any party, after notice to the opposing party and any third party from whom discovery is sought, and an opportunity to be heard, may authorize such discovery as provided for under [Mass.R.Crim.P. 30(c)(4), as appearing in 435 Mass. 1501 (2001)], from either party or any third party as is deemed appropriate, subject to appropriate protective orders or an order to the party seeking discovery to produce reciprocal discovery.

"Such discovery may include items and biological materials from third parties, provided the party seeking discovery demonstrates that analysis of these items or biological material will, by a preponderance of the evidence, provide evidence material to the identification of a perpetrator of the crime.

"If, in response to a motion made under [§ 3(c)], the court finds good cause for the moving party's inability to obtain items or information required under [§ 3(b)] and [§ 7(b)], the court may order discovery to assist the moving party in identifying the location and condition of evidence or biological material that was obtained in relation to the underlying case, regardless of whether it was introduced at trial or would be admissible.  The court, when considering such discovery requests, shall not require the

4.  <u>The judge's memorandum of decision</u>.  The judge issued written findings of fact and conclusions of law in which she concluded that Lyons had not met her burden of showing an adequate chain of custody under G. L. c. 278A, § 7(b)(2), and had failed to establish that DNA testing had the potential to result in evidence that would be material to Lyons's identity as the murderer under § 7(b)(4).  (See note 7, <u>supra</u>.) Consequently, the judge denied the § 3 motion.[11]

With respect to the defense burden under § 7(b)(2), the judge determined that Lyons failed to show an adequate chain of custody to establish the integrity of the hair exhibits.  The judge wrote,

> "Although I have no independent recollection of this matter, I credit [the ADA's] representation that the hair samples were admitted at trial by [defense counsel] as exhibits in unsealed envelopes, without any consideration for the possibility that this forensic evidence would be handled, contaminated, replaced, or lost by the jurors during deliberations.  Moreover, the defendant chose not to take the court up on its offer to present further evidence to rebut [the ADA's] assertion.  Thus, the chain of custody of this putative biological material clearly was broken at the door of the jury deliberation room, if not earlier . . . while in the care and custody of unknown parties."

Regarding the defense showing under § 7(b)(4), the judge concluded that Lyons failed to show that the requested analysis

---

establishment of a prima facie case for relief under [Mass.R.Crim.P. 30]."

[11] Lyons filed a motion to reconsider (or in the alternative a renewed § 3 motion), which the judge also denied.  Before us is the consolidated appeal from the denials of both motions.

"has the potential to result in evidence that is material to the moving party's identification as the perpetrator of the crime in the underlying case."  The judge's reasoning was as follows:

> "In the case at bar, determining the source of the hair would not have proved that the source was the victim's assailant.  The defendant admitted to the police that she was alone with the victim in the park.  Besides, there was no evidence that the victim engaged in a fight or struggle with his murderer so as to result in the assailant's hairs being clutched by the victim.  What is more, given the unwashed condition of the blanket or bedding on which the defendant and victim slept in an open park, the hairs in the victim's hands could have originated at any time and from any number of sources, including from a dog.  In addition, it was [the Commonwealth's expert's] opinion that the hairs probably came from the victim's own head as a result of his defensive or reflexive moves.  In the alternative, the jurors, who had the opportunity to examine the hairs, could have determined that they matched the long, blonde hair of the defendant.  In either case, the defendant's claim that the hairs came from some unknown human being amounts to pure speculation."

The judge did not explicitly address the defense burden under the remaining subsections of § 7(b).

Discussion.  1.  Condition of evidence and chain of custody.  The statute governing a postconviction motion to conduct forensic or scientific analysis of biological material contemplates the possible need for discovery before such a motion properly can be decided.  Under G. L. c. 278A, § 7(c), the court on motion and after notice and hearing "may authorize such discovery as provided for under [Mass.R.Crim.P. 30(c)(4), as appearing in 435 Mass. 1501 (2001)]"; § 7(c) further provides that "[i]f, in response to a motion made under [§ 3(c)], the

court finds good cause for the moving party's inability to obtain items or information required under [§ 3(b)] and [§ 7(b)], the court may order discovery to assist the moving party in identifying the location and condition of evidence or biological material that was obtained in relation to the underlying case . . . ."

Lyons contends that the judge should have granted her request for discovery and that the failure to do so prevented her from establishing an adequate chain of custody as required by § 7(b)(2). She also challenges the judge's reliance on the ADA's representation at the hearing that the envelopes containing the exhibits went to the jury unsealed, claiming that unsworn statements of a prosecutor cannot substitute for evidence. We agree with both assertions.

First, it appears that exhibits 71-73 are in the custody of the State police and, if so, they should be available for inspection. Indeed, we discern no valid reason to preclude Lyons from viewing the exhibits in order to determine the condition of the envelopes and ascertain whether any or all of them still contain the strands of hair retrieved from the victim.[12] In the language of the statute, we conclude that in the unique circumstances of this case there was "good cause"

---

[12] We are confident that the parties will make mutually acceptable arrangements to conduct a physical inspection of the evidence.

under § 7(c) for Lyons's present inability to establish the condition of the biological evidence and that it has been subject to a sufficient chain of custody.  We also conclude that the judge should have ordered suitable discovery to advance the resolution of these questions.

Clearly, the issue whether a physical inspection will provide evidence helpful to Lyons in meeting her burden remains an open question.[13]  It may turn out, as the judge concluded (prematurely in our view), that the envelopes are unsealed,[14] lending support to the Commonwealth's position that the chain of custody was broken once the exhibits were sent to the jury deliberation room.  On the other hand, the condition of the envelopes, if currently sealed, may provide support to a contrary conclusion.  And while the current sealed or unsealed condition of the envelopes is an important first inquiry, in our view neither fact by itself need automatically dispose of the

---

[13] We repeat here what the statute ultimately requires:  a defendant must demonstrate, by a preponderance of the evidence, that the "biological material has been subject to a chain of custody that is <u>sufficient to establish</u> that it has not deteriorated, been substituted, tampered with, replaced, handled or altered <u>such that the results of the requested analysis would lack any probative value</u>" (emphases supplied).  We observe that we are not called upon in this appeal to render a comprehensive interpretation of this language.

[14] Indeed, the envelopes may even be empty.

chain of custody question before the trial court;[15] it is thus possible that the physical inspection may give rise to a need for additional appropriate discovery.[16]  In any event, the question whether Lyons can meet her burden cannot be resolved without additional discovery, beginning with a physical inspection of the exhibits.[17]

We are also persuaded that the judge's reliance on the ADA's memory of the condition of the envelopes was misplaced. In so concluding, we do not mean to suggest that the ADA is not

---

[15] For example, in common experience an unsealed but closed envelope with an adhesive flap can become sealed due to such factors as the passage of time, the quality of the adhesive, and the conditions of storage (including compression, temperature, and moisture levels).  Conversely, an envelope sealed with an adhesive flap can become unsealed over time depending on similar factors.  (Here, a dozen years have passed since the trial.) Part of the difficulty in the instant case is the lack of information about the exact nature of the exhibit envelopes and their storage history -- matters as to which a physical examination is likely to shed some light.

[16] For example, the defense conceivably might seek other testimony, such as from trial counsel or court officers regarding the appearance or handling of the exhibits during the trial; or from clerk's office or State police personnel about the appearance or handling of the exhibits thereafter.  It is also not beyond possibility that expert evidence might be sought regarding the properties or behavior over time of any adhesive on the exhibit envelopes.  We do not, however, opine in advance whether any of these forms of discovery must be permitted.

[17] We acknowledge that during the hearing, when asked by the judge to specify what discovery he would seek, defense counsel equivocated:  "I don't know at the moment.  I would have to -- I would have to come with a motion."  Such a motion was eventually filed, but only after the judge had first denied the § 3 motion. See text accompanying note 10, supra.

credible or that a judge could not rely on statements made by an attorney as an officer of the court in some circumstances.  We are saying only that those circumstances do not exist in this case.  Here, rather than relying on the ADA's memory, there is a readily available method to determine by direct physical inspection the very important -- though, as we have indicated, perhaps not determinative -- threshold fact whether the envelopes are currently sealed or unsealed.

2.  Potential for materiality.  Lyons next argues that she satisfied her burden under § 7(b)(4) because the requested DNA testing of the hair has the potential to identify the murderer. She contends that the judge construed the statute too narrowly when she concluded that her motion should be denied because the "claim that the [strands of] hair[] came from some unknown human being amounts to pure speculation."  Lyons is correct.  At the time the judge ruled on Lyons's motion, she did not have the benefit of the Supreme Judicial Court decision in Commonwealth v. Clark, 472 Mass. 120 (2015), or our decision in Commonwealth v. Coutu, 88 Mass. App. Ct. 686 (2015).  In Clark, the court clarified that "[t]he Legislature's use of the word 'potential' in § 7(b)(4) suggests an awareness of the fact that the requested forensic analysis may not produce the desired evidence, but such a consequence should not be an impediment to analysis in the first instance."  Commonwealth v. Clark, supra

at 135-136.  In other words, it matters not whether Lyons can demonstrate that DNA testing will identify the perpetrator; the critical inquiry is whether such testing has the "potential" to result in material identification evidence.  This "potential" is not diminished by the defense strategy pursued at trial or by the fact, as the Commonwealth emphasizes, that there was never a claim at trial that the hair belonged to Lyons.  The point is "[e]ven if it is 'highly unlikely' that DNA testing will yield any probative results," Commonwealth v. Coutu, supra at 702, Lyons has met her burden under § 7(b)(4).

Conclusion.  As we have discussed, we conclude that Lyons was entitled to discovery regarding the condition and chain of custody of the evidence and that the judge erred when she found that Lyons had not met her burden under § 7(b)(4).  We therefore vacate the order denying the § 3 motion and remand the matter to the Superior Court for additional proceedings consistent with this opinion.  These shall include an order permitting physical inspection of trial exhibits 71-73; such additional discovery as deemed warranted by the judge; a determination whether Lyons has demonstrated, by a preponderance of the evidence, the requirements of G. L. c. 278A, § 7(b)(1) & (2); and, if so, a determination whether Lyons has also met the requirements of § 7(b)(3), (5), & (6).

So ordered.