NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11913

COMMONWEALTH  vs.  ROBERT D. WADE.


Plymouth.     January 11, 2016. - July 29, 2016.

Present:  Spina, Cordy, Botsford, Duffly, Lenk, & Hines, JJ.[1]



Deoxyribonucleic Acid.  Evidence, Scientific test.  Practice,
    Criminal, Postconviction relief, Waiver, Capital case.
    Statute, Construction.  Witness, Privilege.  Attorney at
    Law, Attorney-client relationship.  Homicide.  Felony-
    Murder Rule.  Rape.




    Indictment found and returned in the Superior Court
Department on December 6, 1993.

    Following review by this court, 428 Mass. 147 (1998), and
467 Mass. 496 (2014), a motion for deoxyribonucleic acid
testing, which had been filed on March 26, 2012, and which was
supplemented on April 30, 2014, was heard by Charles J. Hely, J.

    A request for leave to appeal was allowed by Spina, J., in
the Supreme Judicial Court for the county of Suffolk.


    Janet H. Pumphrey for the defendant.
    Mary Lee, Assistant District Attorney, for the
Commonwealth.
    The following submitted briefs for amici curiae:

---

[1] Justice Duffly participated in the deliberation on this
case and authored this opinion prior to her retirement.

Ira L. Gant, Stephanie Roberts Hartung, & David Lewis for Committee for Public Counsel Services Innocence Program & others.

Michael D. Ricciuti, Kathleen D. Parker, & Patrick C. McCooe for Boston Bar Association.

Martin W. Healy for Massachusetts Bar Association.

Stanley L. Donald, pro se.

Matthew M. Burke, Dara A. Reppucci, Hillel Nadler, Shivan Sarin, & David Lewis for Massachusetts Association of Criminal Defense Lawyers.

DUFFLY, J.  This case requires us to decide whether the petitioner, Robert Wade, who filed a motion in the Superior Court seeking postconviction testing of biological material pursuant to G. L. c. 278A ("An Act providing access to forensic and scientific analysis") (act), see St. 2012, c. 38, has satisfied the requirements of the act and therefore is entitled to the testing he seeks.

The Legislature enacted G. L. c. 278A to create a process "separate from the trial and any subsequent proceedings challenging an underlying conviction, that permits forensic and scientific analysis of evidence or biological material, the results of which could support a motion for a new trial." Commonwealth v. Clark, 472 Mass. 120, 121-122 (2015).  The Legislature's stated purpose in enacting G. L. c. 278A was "to remedy the injustice of wrongful convictions of factually innocent persons by allowing access to analyses of biological material with newer forensic and scientific techniques . . . [to] provide a more reliable basis for

establishing a factually correct verdict than the evidence available at the time of the original conviction."  Commonwealth v. Wade, 467 Mass. 496, 504 (2014) (Wade II), quoting 2011 Senate Doc. No. 753 and 2011 House Doc. No. 2165.

We conclude that because Wade has demonstrated that "the requested analysis had not yet been developed at the time of conviction," G. L. c. 278A, § 3 (b) (5) (i), he has met the requirement of the act to establish one of the five enumerated reasons explaining why the requested testing was not previously conducted.  See G. L. c. 278A, § 3 (b) (5) (i)-(v).  It was therefore an abuse of discretion for the Superior Court judge to deny Wade's motion for scientific testing on the ground that Wade also was required to establish that the enumerated reason was the "primary reason" that his trial attorney did not seek the requested analysis, and that a reasonably effective attorney would have done so.  Accordingly, the order denying Wade's motion for scientific testing must be reversed.

1.  Statutory framework.  The act establishes a two-step procedure for obtaining postconviction forensic or scientific analysis.  See Wade II, supra at 501.  The first step involves a threshold determination whether a motion filed pursuant to G. L. c. 278A, § 3 (§ 3 motion), satisfies the criteria set forth in that section.  See id. at 503-504.  This step is essentially "nonadversarial," and the determination is to be made based

primarily on the moving party's filings.  Id.  At this threshold stage, "a moving party is required only to point to the existence of specific information that satisfies the statutory requirements."  Commonwealth v. Donald, 468 Mass. 37, 41 (2014).

If the requirements of the first step are satisfied, the moving party advances to the second step of the procedure, an evidentiary hearing pursuant to G. L. c. 278A, § 7.  Wade II, supra at 501.  See G. L. c. 278A, §§ 6, 7.  At that hearing, the moving party must establish by a preponderance of the evidence each of the six factors set forth in § 7 (b) (1)-(6).[2]  See Wade

_____

[2] General Laws c. 278A, § 7 (b), provides in full:

"The court shall allow the requested forensic or scientific analysis if each of the following has been demonstrated by a preponderance of the evidence:

"(1) that the evidence or biological material exists;

"(2) that the evidence or biological material has been subject to a chain of custody that is sufficient to establish that it has not deteriorated, been substituted, tampered with, replaced, handled or altered such that the results of the requested analysis would lack any probative value;

"(3) that the evidence or biological material has not been subjected to the requested analysis for any of the reasons in [G. L. c. 278A, § 7 (b) (5) (i)-(v)];

"(4) that the requested analysis has the potential to result in evidence that is material to the moving party's identification as the perpetrator of the crime in the underlying case;

"(5) that the purpose of the motion is not the obstruction of justice or delay; and

II, supra at 503.  The third factor, § 7 (b) (3), requires a moving party to demonstrate that "the evidence or biological material has not been subjected to the requested analysis for any of the reasons" enumerated in § 3 (b) (5).  Those reasons are

> "(i) the requested analysis had not yet been developed at the time of the conviction;
>
> "(ii) the results of the requested analysis were not admissible in the courts of the commonwealth at the time of the conviction;
>
> "(iii) the moving party and the moving party's attorney were not aware of and did not have reason to be aware of the existence of the evidence or biological material at the time of the underlying case and conviction;
>
> "(iv) the moving party's attorney in the underlying case was aware at the time of the conviction of the existence of the evidence or biological material, the results of the requested analysis were admissible as evidence in courts of the commonwealth, a reasonably effective attorney would have sought the analysis and either the moving party's attorney failed to seek the analysis or the judge denied the request; or
>
> "(v) the evidence or biological material was otherwise unavailable at the time of the conviction" (emphasis added).

G. L. c. 278A, § 3 (b) (5).

Where a moving party has established "any of the reasons" enumerated in § 3 (b) (5), thereby satisfying § 7 (b) (3), and has also satisfied the other five requirements of § 7 (b),

---

> "(6) that the results of the particular type of analysis being requested have been found to be admissible in courts of the commonwealth."

"[t]he court shall allow the requested forensic or scientific analysis." Id.

2. Factual and procedural background. In 1997, a Superior Court jury convicted Wade of murder in the first degree on a theory of felony-murder, predicated on his conviction of aggravated rape. See Commonwealth v. Wade, 428 Mass. 147, 155 (1988). Since 2002, Wade has been seeking postconviction testing of physical evidence introduced at his trial. Wade II, 467 Mass. at 497. We previously concluded, in Wade II, supra, that Wade had satisfied the requirements of the act's first step, § 3. As a necessary prerequisite of § 3, Wade denied having raped the victim, asserted that he was innocent of rape and murder, and submitted an affidavit from a forensic expert stating that the requested testing would, in his opinion, "determine conclusively" whether Wade was a contributor or the sole contributor to the deoxyribonucleic acid (DNA) found on samples taken from the victim's vagina and clothing. Id. at 507. We determined that Wade was thus entitled to proceed to the second step of the procedure on the question whether his motion for DNA testing should be granted, and ordered the matter remanded to the Superior Court for an evidentiary hearing pursuant to § 7.

Wade initially filed his § 3 motion seeking DNA testing under § 3 (b) (5) (iv), what we will refer to as the "reasonably

effective attorney" prong. Prior to the hearing, Wade moved to supplement his motion by asserting an additional or alternative basis for relief under § 3 (b) (5) (i), the "undeveloped analysis" prong, which provides that the evidence was not subjected to the requested analysis because "the requested analysis had not yet been developed at the time of the conviction." G. L. c. 278A, § 3 (b) (5) (i). The motion judge, a different judge from the one who had denied Wade's § 3 motion, and who also was not the trial judge, allowed the motion to supplement.[3]

Also prior to the hearing, but after Wade's motion to supplement had been allowed, the Commonwealth filed a motion seeking leave to summons and examine Wade's trial counsel on the question whether a "reasonably effective attorney" would have sought the requested testing before trial. Wade filed a motion seeking to preclude such testimony. The judge allowed the Commonwealth's motion, and Wade filed a petition for relief pursuant to G. L. c. 211, § 3, in the county court. The single justice determined that examination of Wade's trial counsel could proceed where, "without revealing attorney-client communications," the testimony could offer evidence on the question whether a "reasonably effective attorney" would have

---

[3] As discussed infra, Wade waived his reliance on the reasonably effective attorney prong during the evidentiary hearing.

sought the requested DNA analysis before trial.

During the evidentiary hearing, postconviction counsel asserted that Wade was required to establish only one of the five reasons under § 3 (b) (5). When the Commonwealth sought to elicit responses from Wade's trial counsel, postconviction counsel objected on the ground that the answers were privileged. His objections were overruled. Postconviction counsel then orally waived the claim under the reasonably effective attorney prong, in order to proceed solely on the undeveloped analysis prong.[4] The Commonwealth asserted, as it does on appeal, that even where a moving party seeks relief solely under the undeveloped analysis prong, the act necessarily contemplates that trial counsel's testimony may be used to demonstrate both the state of counsel's knowledge at the time of trial and counsel's trial strategy, in order to determine the actual reason that the evidence was not tested. The Commonwealth then

---

[4] We reject the Commonwealth's argument that G. L. c. 278A, § 15, prohibits a moving party from waiving or withdrawing a claim that has been asserted under G. L. c. 278A, § 3 (b) (5). General Laws c. 278A, § 15, states explicitly that "[t]he right to file a motion under this chapter shall not be waived." By its plain language, this provision was intended to protect a moving party's right to file a motion seeking scientific testing. Nothing in the statutory language, however, prohibits a moving party from withdrawing a claim under one prong of G. L. c. 278A, § 3 (b) (5), and choosing to proceed only under one of the remaining theories presented in the party's motion, nor does any portion of G. L. c. 278A (act) suggest a legislative intent to preclude a party from withdrawing or dismissing a claim once filed, as generally permitted with any motion for postconviction relief.

asked trial counsel what he had been told by Wade about his encounter with the victim. When counsel again declined to answer, the judge said, "I order you to answer that question." Trial counsel then did so. Postconviction counsel moved to strike the testimony disclosing privileged information. The motion was denied.

Following the evidentiary hearing, the judge found that the requested analysis had not been developed at the time of Wade's conviction, thereby finding that Wade had satisfied the undeveloped analysis prong, which in turn satisfies § 7 (b) (3).[5] But the judge rejected Wade's assertion that he need only satisfy one of the reasons set forth in § 3 (b) (5) in order to satisfy § 7 (b) (3). According to the judge, "the proper inquiry under [§] 7 (b) (3) is what [is] the primary 'reason,'

_____

[5] The judge also found that Wade had satisfied four of the other five requirements of § 7 (b). The judge did not reach one of the requirements, § 7 (b) (5), which requires that a moving party establish that "the purpose of the motion is not the obstruction of justice or delay." The sole evidence before the judge on this issue was an affidavit by postconviction counsel attesting to her efforts, spanning thirteen years, to obtain deoxyribonucleic acid (DNA) testing on Wade's behalf through the Massachusetts and Federal courts. The Commonwealth did not dispute that Wade had satisfied this requirement. Where there was no live testimony and a factual finding must be made on the basis of a documentary record alone, we are "in the same position as the motion judge" to resolve the issue. See Commonwealth v. Clark, 472 Mass. 120, 130, 135 (2015). Having carefully reviewed counsel's affidavit, we conclude that the purpose of Wade's motion was not to delay or to obstruct justice and Wade therefore has satisfied all five of the other requirements of § 7 (b).

i.e.[,] the primary cause, why the material was not previously subjected to the requested analysis."  In connection with this inquiry, the judge relied on the privileged communications disclosed by Wade's trial counsel.  Ultimately, the judge denied Wade's § 3 motion on the ground that he had not met the requirements of the reasonably effective attorney prong because a "reasonably effective attorney" would not have sought the requested analysis.  Wade then filed a second petition pursuant to G. L. c. 278, § 33E, seeking leave to appeal from the denial of his § 3 motion for forensic and scientific testing under G. L. c. 278A, § 7, and the single justice allowed the appeal to proceed before the full court.

3.  Discussion.  a.  Standard of review.  We review a question of statutory interpretation de novo.  Commonwealth v. Ventura, 465 Mass. 202, 208 (2013).  "The general and familiar rule is that a statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished."  Commonwealth v. Millican, 449 Mass. 298, 300 (2007), citing Hanlon v. Rollins, 286 Mass. 444, 447 (1934).  A guiding principle of statutory interpretation is "that the statutory language should be given effect consistent with its

plain meaning and in light of the aim of the Legislature unless to do so would achieve an illogical result."  Sullivan v. Brookline, 435 Mass. 353, 360 (2001), and cases cited.

b.  Statutory reason testing previously not performed.  We address first whether the act permits a judge to consider any of the other reasons enumerated in § 3 (b) (5) (i)-(v), once a moving party has established one of those reasons, to explain why the evidence has not been subjected to the requested analysis.  See G. L. c. 278A, § 7 (b) (3).  General Laws c. 278A, § 7 (b) (3), mandates that the court "shall allow" the requested testing if the moving party establishes, in addition to the other required factors under G. L. c. 278A, § 7 (b), that the testing was not conducted previously "for any of the reasons" enumerated in § 3 (b) (5) (i)-(v).  The plain meaning of the phrase "for any of the reasons" is that the requirement is satisfied when any one of the several enumerated alternatives is met.  See, e.g., G. L. c. 90, § 32G ("registrar may suspend or revoke a license . . . for any of the following causes"); G. L. c. 140, § 131 (e) (State police shall notify State firearms licensing authority "whether there is reason to believe that the applicant is disqualified for any of the foregoing reasons").  Thus, the phrase "for any of the reasons" means that a moving party satisfies the requirement of § 7 (b) (3) once the party has established any one of the enumerated reasons.  See

Olmstead v. Department of Telecomm. & Cable, 466 Mass. 582, 588 (2013), quoting Massachusetts Broken Stone Co. v. Weston, 430 Mass. 637, 640 (2000) ("we give effect to a statute's 'plain and ordinary meaning' where the statute's words are clear").

Moreover, the use of the word "or" to separate each of the enumerated reasons clearly evinces the Legislature's intent that a moving party may satisfy this prong by establishing any one of the enumerated reasons.  "The word 'or' is given a disjunctive meaning unless the context and the main purpose of all the words demand otherwise."  Nuclear Metals, Inc. v. Low Level Radioactive Waste Mgt. Bd., 421 Mass. 196, 212 (1995), quoting Eastern Mass. St. Ry. v. Massachusetts Bay Transp. Auth., 350 Mass. 340, 343 (1966), and cases cited.  The language of the act plainly indicates the Legislature's intent to provide a moving party with a choice among several, distinct reasons advanced by the moving party to explain why the material had not been previously subjected to the requested testing.  Nothing in the context or the stated statutory purpose of the act suggests that we should interpret the word "or" in § 3 (b) (5) to have anything but its ordinary disjunctive meaning.

Indeed, it would be nonsensical to attribute a conjunctive meaning to the word "or" as used in this section, given that at least some of the enumerated reasons are mutually exclusive. The reasonably effective attorney prong, for instance, presumes

that the requested analysis was developed at the time of conviction, that the results of such analysis were admissible at trial, and that the moving party or the moving party's trial counsel were aware that the evidence existed. See G. L. c. 278A, § 3 (b) (5) (iv). By contrast, the first three prongs require a moving party to establish, respectively, that the requested analysis had not been developed, that the results of the requested analysis were not admissible at trial, or that neither the moving party nor the moving party's attorney was aware that the evidence existed. See G. L. c. 278A, § 3 (b) (5) (i)-(iii).[6]

Properly understood, each of these five enumerated reasons provides a moving party with alternate pathways to establish that he or she is entitled to the requested analysis. See Commonwealth v. Williamson, 462 Mass. 676, 681 (2012), quoting Commonwealth v. Fall River Motor Sales, Inc., 409 Mass. 302, 316 (1991) ("Statutes should be read 'as a whole to produce internal consistency"). And the reasonably effective attorney prong permits a moving party to obtain the requested analysis even where the moving party is unable to satisfy any of the three preceding prongs. See G. L. c. 278A, § 3 (b) (5) (iv). That

---

[6] The fifth prong provides a final path by which a moving party may obtain the requested analysis, by establishing that the "evidence or biological material was otherwise unavailable at the time of conviction." G. L. c. 278A, § 3 (b) (5) (v).

is, even where the moving party or his or her attorney was aware of the existence of the evidence, the requested analysis had been developed at the time of conviction, and the results of such analysis would have been admissible, a moving party nonetheless may obtain the requested analysis where the party can establish that a "reasonably effective attorney" would have requested it, but that his trial counsel did not do so.  Id.

For the foregoing reasons, we conclude that the Legislature could not have intended that a moving party must also satisfy the reasonably effective attorney prong if the party has already satisfied the undeveloped analysis prong.  Accordingly, because Wade satisfied the requirement of § 3 (b) (5) (i), the undeveloped analysis prong, he was not required to satisfy any of the other prongs of § 3 (b) (5).

c.  "Primary" or "actual" reason testing was not conducted. We turn to discussion of the judge's determination that Wade was required also to establish the "primary reason" why the evidence was not tested previously.  The Commonwealth argues that the judge's reasoning was correct, and that the statute indeed requires a moving party to prove the "actual reason" that the testing was conducted.  The Commonwealth maintains further that the Legislature intended to preclude a moving party's access to postconviction scientific testing if the "actual reason" the testing was not conducted was a strategic decision made by "a

reasonably effective attorney."

The words "primary reason" or "actual reason" do not appear in the referenced statutory provisions, or anywhere else in the language of the act. Nor is there anything in the act from which it can be gleaned that the Legislature intended to require such a finding, or to impose additional burdens on petitioners seeking scientific testing beyond the requirements mandated by the statutory language. The act lists five alternative reasons on which a party may rely to show why testing was not performed. It contains no requirement that a moving party prove "the primary reason" among them. Rather, as discussed, a moving party satisfies § 7 (b) upon establishing that "any of the reasons" set forth in § 3 (b) (5) are applicable to the facts of the party's case. "We do not read into the [act] a provision which the Legislature did not see fit to put there, nor add words that the Legislature had an option to, but chose not to include." Commissioner of Correction v. Superior Court Dep't of the Trial Court for the County of Worcester, 446 Mass. 123, 126 (2006).

Moreover, our decision in Wade II, supra, forecloses the argument that a moving party may not obtain requested testing if a reasonably effective trial counsel did indeed make a strategic decision not to have the material tested at the time of trial. In that case, we expressly rejected the argument that the

meaning of "a reasonably effective attorney" under § 3 (b) (5) (iv) imports the standard of ineffective assistance of counsel. See Wade II, supra at 511-512. We concluded that the act's inquiry, whether "a reasonably effective attorney" would have sought the requested testing, is an objective one.[7] Id. at 512. In part, we reasoned that, because the act uses the language of "a" hypothetical reasonably effective attorney, a moving party is not required to explain the tactical or strategic reasoning of the party's trial counsel in not seeking the requested analysis.[8] See Wade II, supra at 511. See Commonwealth v. Coutu, 88 Mass. App. Ct. 686, 703 (2015). Thus, regardless whether a moving party proceeds under the reasonably effective attorney prong or any other prong of § 3 (b) (5), whether his or her trial counsel made a strategic decision to forgo such testing is not relevant to that inquiry.

_____

[7] We noted also that the statutory language in § 3 (b) (5) (iv) "contrasts with provisions in statutes in other jurisdictions providing for postconviction DNA testing, which explicitly incorporate the ineffective assistance of counsel standard, or explicitly require that trial counsel not have made a strategic or tactical decision in forgoing a request for DNA testing." See Wade II, supra at 512 & n.21.

[8] In contrast, we observe that the act refers specifically to "the moving party's attorney" in several places. See, e.g., G. L. c. 278A, § 3 (b) (iii), (iv). Because the Legislature knew how to reference the moving party's trial counsel when it wanted to, its use of the phrase "a reasonably effective attorney" was clearly included to distinguish a hypothetical "reasonably effective attorney" from the moving party's trial counsel. See Nguyen v. William Joiner Ctr. for the Study of War & Social Consequences, 450 Mass. 291, 301 (2007).

This understanding is consistent with § 3 (d), which permits testing even where a moving party has pleaded guilty or made incriminating statements. See Wade II, supra at 514 (plain language of G. L. c. 278A, § 3 [d], and purpose for which act was enacted evinces Legislature's clear intent "to ensure that a moving party will be able to meet the requirements of G. L. c. 278A, § 3, notwithstanding any incriminating statements the party may have made, a guilty plea, or a plea of nolo contendere"). As we observed in Commonwealth v. Clark, 472 Mass. 120, 136 (2015), quoting Wade II, supra at 511, "[g]iven its compelling interest in remedying wrongful convictions of factually innocent persons, the Legislature intended to permit access to DNA testing 'regardless of the presence of overwhelming evidence of guilt in the underlying trial.'"

We conclude that Wade was not required to establish the "primary reason" that the evidence was not tested.

d. Whether requested testing was available at time of trial. The judge found that the DNA analysis requested by Wade was not yet developed at the time of Wade's trial in 1997. We do not agree with the Commonwealth's contention that this finding is clearly erroneous. Wade's DNA expert testified that, as of September, 1997, it was not possible to test all thirteen

loci of the CODIS STR panel.[9]  The expert acknowledged that an early form of DNA analysis was available in 1997, but stated that the "average power of discrimination" for the earlier tests was "on the range of one in a few thousand."  By contrast, the DNA testing now available has the "discriminating power" of "[m]any, many, many orders of magnitude" higher than the earlier tests, which is in the "trillions, quadrillions, and so forth."[10]  The Commonwealth did not challenge these assertions on cross-examination, and did not introduce other evidence to the contrary.

The judge's finding that the DNA analysis Wade requested was not developed at the time of his trial is thus sufficiently supported by evidence in the record.  The record demonstrates that the requested analysis has the discriminating power of, at a minimum, one in trillions, while the tests available at the

---

[9] Wade requested the DNA analysis that was available at the time of his evidentiary hearing in 2014, which included an analysis of thirteen short tandem repeat (STR) loci.  "A DNA profile for an individual is that combination of alleles, or versions of genes, possessed by the individual at the loci tested."  Commonwealth v. Gaynor, 443 Mass. 245, 248 n.1 (2005).  As Wade's expert explained during the evidentiary hearing, the Federal Bureau of Investigation has "adopted the [thirteen] loci of the Profiler Plus and Cofiler tests as the STR loci required for participation in the national DNA database known as CODIS, or Combined DNA Index System."

[10] The DNA expert indicated that, in practice, the ability of a particular test to discern contributors to a sample would depend on many factors, including, for example, whether the sample came from a single source, was a full profile, or was part of mixture.

time of Wade's conviction had the discriminating power of one in a few thousand. On these facts, we cannot say that the judge's finding was clearly erroneous. Wade thus has satisfied § 3 (b) (5) (i), which, in turn, satisfies the requirements of § 7 (b) (3).

e. _Attorney-client privilege and motion to strike_. As stated, Wade's postconviction counsel objected to questions posed by the Commonwealth at the evidentiary hearing that sought to pierce the attorney-client privilege, and his trial counsel declined to answer the questions. The judge concluded that the privilege had been waived, and ordered trial counsel to reveal privileged communications; he also denied Wade's motion to strike those answers. This was error.

The Commonwealth contends that the act of filing a motion under the act necessarily waives a moving party's attorney-client privilege, and that a moving party cannot assert the privilege to prevent the Commonwealth from proving the "real reason" testing was not conducted in a particular case. Although a litigant implicitly may waive the attorney-client privilege as to matters the litigant has placed at issue, see Darius v. Boston, 433 Mass. 274, 277-278 (2001), such a waiver is not applicable here, where Wade has not put "at issue" privileged attorney-client communications regarding the reasons that trial counsel did not seek DNA testing. See Mass. G. Evid.

§ 523(b)(2) (2016) (privilege waived where person holding privilege "introduces privileged communications as an element of a claim or defense").

Wade maintains that he is entitled to the requested analysis because it was not available at the time of his conviction, see § 3 (b) (5) (i); this inquiry is objective and does not require any information protected by the attorney-client privilege. See Clair v. Clair, 464 Mass. 205, 219 (2013), quoting Darius v. Boston, supra at 284 ("there can be no 'at issue' waiver unless it is shown that the privileged information sought to be discovered is not available from any other source"). Moreover, even where a moving party proceeds with a claim under § 3 (b) (5) (iv), which requires consideration of what "a reasonably effective attorney" would have done, that inquiry also is objective, and therefore does not require testimony or an affidavit from trial counsel. See Wade II, supra at 511-512.

We conclude that Wade did not effect an "at issue" waiver by filing his petition, and his motion to strike all privileged communications disclosed by trial counsel should have been allowed.

4. Conclusion. The orders denying the motion for scientific testing and denying the motion to strike are reversed. The matter is remanded to the Superior Court, where

an order shall enter that the requested scientific analysis be conducted forthwith, and for further proceedings consistent with this opinion.

<u>So ordered</u>.