Gordon, Robert B., J.
In November of 2005, a Suffolk County jury convicted John Powell (“Powell” or the “Defendant”) of (1) murder in the second degree, G.L.c. 265, §1; (2) assault with intent to kill, G.L.c. 265, §18(b), a lesser included offense of the charged assault with intent to murder; (3) unlawful possession of a firearm, G.L.c. 269, §10(a); (4) unlawful possession of ammunition, G.L.c. 269, § 10(h); and (5) possession of cocaine with intent to distribute, G.L.c. 94C, §32A. Powell appealed these convictions, and the Appeals Court affirmed all but the conviction for possession of cocaine with intent to distribute (which it reversed). Powell subsequently filed a motion for a new trial, which was denied.[1]
With an eye toward a second new trial motion, the Defendant has now filed a motion for forensic discovery pursuant to G.L.c. 278A. In this motion, Powell seeks DNA testing of blood on a baseball bat that was found at the crime scene and used by the victim in the hours before his murder. The Commonwealth opposes the motion, arguing that the Defendant cannot show, as he must under G.L.c. 278A, §7(b)(4), that the testing will potentially result in evidence that is material to the identity of the murder’s perpetrator. Upon consideration the parties' arguments and a review of the appellate authority construing and applying Chapter 278A, the Court concludes that the Defendant’s motion shall be ALLOWED.
BACKGROUND
The victim, Paul Gauthier, was shot and killed in his apartment at 18 Wardman Road in Roxbury. Gauthier was found in the kitchen/dining area, lying in a pool of blood and near a silver baseball bat. There was blood on the victim’s hands, on the baseball bat, and throughout the victim’s apartment. Earlier that day, Gauthier had used the baseball bat to vandalize 16 Wardman Street, a reputed crack house where the Defendant sold cocaine, causing extensive property damage. The victim had also been seen chasing two unidentified black men (neither of whom was the Defendant) with the bat in his hands. The Defendant seeks to test the blood-stained baseball bat in accordance with G.L.c. 278A, asserting that the presence of third-party DNA will show that someone other than Powell (i.e., someone whom Gauthier may have assaulted and injured with the bat earlier in the day) had a motive to commit the murder.
A post-conviction request for DNA testing under G.L.c. 278A activates two stages of analysis. Commonwealth v. Wade, 467 Mass. 496, 501 (2014) (Wade II). At the first stage, the Court conducts a limited inquiry into whether the moving party has satisfied the threshold requirements of G.L.c. 278A, §3. Commonwealth v. Donald, 468 Mass. 37, 41. (2014). Under Section 3, the moving party is required to point to specific information demonstrating that he meets the qualifying criteria of Section 3(b), and submit an affidavit of factual innocence as required by Section 3(d).[2] Id. “This step is essentially ‘nonadversarial,’ and the determination is to be made based primarily on the moving party’s filings.” Commonwealth v. Wade, 475 Mass. 54, 56 (2016) (Wade III). In May 2016, this Court (Brassard, J.) found that Powell had satisfied the Section 3 criteria, and that his motion should thus proceed to the next stage of analysis.
The Defendant’s motion is now at the second stage. Ordinarily at this stage, the Court holds an evidentiary hearing in which the moving party is required to demonstrate by a preponderance of the evidence each of the six factors set forth in Section 7(b)(l)-(6). Id.; G.L.c. 278A, §§6-7. Those factors are:
(1) that the evidence or biological material exists;
(2) that the evidence or biological material has been subject to a chain of custody that is sufficient to establish that it has not deteriorated, been substituted, tampered with, replaced, handled or altered such that the results of the requested analysis would lack any probative value;
(3) that the evidence or biological material has not been subjected to the requested analysis for any of the reasons in [G.L.c. 278A, §7(b)(5)(i)-(v)];
(4) that the requested analysis has the potential to result in evidence that is material to the moving *659 party’s identification as the perpetrator of the crime in the underlying case;
(5) that the purpose of the motion is not the obstruction of justice or delay; and
(6) that the results of the particular type of analysis being requested have been found to be admissible in courts of the commonwealth.
G.L.c. 278A, §7(b). In the case at bar, the Court did not conduct an evidentiary hearing. Instead, and with the consent of both parties, the Court held only a non-evidentiary hearing on the motion.[3] In opposing the Defendant’s motion, the Commonwealth’s principal contention is that the requested DNA testing has no potential to adduce evidence that is material to the Defendant’s identification as the perpetrator of the crime. It is on this basis argued that the Defendant cannot satisfy factor 4 of Section 7(b).[4] Whether the Commonwealth is correct turns on an interpretation of the word “material” as used in factor 4, a term not defined in the text of Chapter 278A. This presents a matter of pure statutory construction, which the Court is prepared to address based on the parties’ briefing and the non-evidentiary hearing held.
DISCUSSION
The Defendant asserts that the requested DNA testing has the potential to lead to evidence material to his identification as the perpetrator, because the presence of a third party’s blood on the baseball bat would show that another person (possibly identifiable through the state’s DNA database) was assaulted before the murder and thus had motive for a revenge killing. The Commonwealth, conversely, argues that evidence merely indicating that another person had a motive to commit a crime does not constitute material identification evidence for purposes of Section 7(b)(4). The Commonwealth maintains that evidence is only material if it is “directly related to the crime” and its commission, which is not the case with motive evidence. The Court disagrees.
In support of its contention, the Commonwealth points to the limited number of appellate decisions addressing Chapter 278A, and argues that these authorities demonstrate that DNA testing is not warranted here. It is certainly true that, in each reported case where a defendant was found to have satisfied Section 7(b)(4), the defendant sought testing that had the potential to produce direct evidence that an alternate perpetrator had made physical contact with the victim during commission of the crime or, at the veiy least, was at the scene when the crime occurred. See Wade III, 475 Mass. at 59 n.5 (DNA testing sought on rape kit); Commonwealth v. Clark, 472 Mass. 120, 131-36 (2015) (knife wielded by and against perpetrator during sexual assault); Commonwealth v. Lyons, 89 Mass.App.Ct. 485, 495 (2016) (hair found in murder victim’s hand); Commonwealth v. Coutu, 88 Mass.App.Ct. 686, 702-03 (2015) (swabs from rape victim’s fingers, which she used to pull perpetrator’s fingers off her face during assault). Although the motive evidence sought in the instant motion conced-edly presents a very different case, the Court is not prepared to conclude that such evidence falls below the standard of materiality as a matter of law. Indeed, none of the Chapter 278A decisions relied upon by the Commonwealth for its asserted standard comprehensively engage with the meaning of the term “material” as used in Section 7(b)(4).[5]Thus, while these decisions establish that evidence potentially establishing a direct link between the subject crime and a third person will satisfy the statute’s materiality requirement, they do not perforce stand for the proposition that evidence which might only provide a more tenuous connection (e.g., motive rather than physical presence) will necessarily be insufficient.
In point of fact, drawing such a conclusion would appear inconsistent with the broader policy principles that have been articulated in these cases. The SJC has thus repeatedly emphasized that a court confronting a Chapter 278A motion should not consider whether the outcome of the testing would entitle a defendant to a new trial under Mass.R.Crim.P. 30. See Wade II, 467 Mass. at 509. In this regard, the Court has declared that:
In enacting G.L.c. 278A, the Legislature separated the procedure for seeking forensic testing from the procedure for seeking scientific testing in conjunction with a motion for a new trial pursuant to Mass.R.Crim.P. 30(b), and intended that G.L.c. 278A provide increased and expeditious access to scientific or forensic testing. It would thwart the legislative purpose to impose on a moving party seeking forensic analysis pursuant to G.L.c. 278A an equal or greater burden of proof than that which is required of a parly seeking discovery under Mass.R.Crim.P. 30(c)(4) . . . [T]he Legislature . . . did not condition access to such testing on some degree of proof that the test results will raise doubt about the conviction.
Id. See also Clark, 472 Mass. at 136 (“the Legislature intended to permit access to DNA testing ‘regardless of the presence of overwhelming evidence of guilt in the underlying trial’ ”); Coutu, 88 Mass.App.Ct. at 703 (observing that a court should not consider the strength of the Commonwealth’s case when determining whether a defendant has satisfied the Section 7 factors). In the same vein, the SJC has also emphasized that, because Chapter 278A is intended to remedy the wrongful conviction of factually innocent persons, Section 7(b) must be construed “in a manner that is generous to the moving party.” Clark, 472 Mass. at 136; see also Coutu, 88 Mass.App.Ct. at 703 (observing that Chapter 278A and its language must be construed liberally in light of the statute’s distinctively defendant-protective purpose).[6]
*660 These declarations from the SJC suggest that Chapter 278A is not meant to pose a terribly high threshold for defendants to clear. If the requested testing need not promise evidence that is especially strong or convincing, at least not strong enough to warrant a new trial, then the Commonwealth’s reading of the term “material” in Section 7(b)(4) would appear to be too narrow. Instead, the pronouncements of the SJC to date indicate that this statutory term should be read, as the Defendant urges, more liberally to mean something akin to evidentiary relevance. See Black’s Law Dictionary (10th ed. 2014) (defining “material” as “(h)aving some logical connection with the consequential facts”). Applying the term “material” so construed, the Court finds that the Defendant has satisfied factor 4 of Section 7(b), because the requested testing has the potential to produce evidence that is relevant to [Le., has some bearing on) the identification of an alternate culprit. Compare Clark 72 Mass. at 138 (record did not indicate any possible connection between pair of socks defendant sought to test and victim’s assailant).
That being said, the Court reaches this conclusion with some substantial misgivings.
The paradigmatic case, and the one that Chapter 278A was clearly designed to address, arises where the articles sought to be tested (e.g., a rape kit, murder weapon, etc.) could directly call into question the actual identity of the perpetrator and thereby lay bare a real risk that the verdict constitutes a substantial miscarriage of justice. See, e.g., Wade III, 475 Mass. at 66 (DNA testing permitted on rape kit). The presence of third-party blood on the baseball bat in the case at bar, by contrast, does not raise the same concerns. Even if the testing revealed another individual’s blood on the bat, and even if that blood could be tied to a specific individual, the bat would only provide evidence that another person had a motive to commit the crime.
It is well settled that “[e]vidence of a third parly’s ill will or possible motive is insufficient alone to support a defense under the third-party culprit doctrine.” Commonwealth v. Wright, 469 Mass. 447, 466 (2014). Accordingly, newly discovered evidence of third-party motive will typically not warrant a new trial, particularly where, as here, the Commonwealth presented a substantial amount of other evidence at trial tying the defendant to the crime. See id. at 466-68 (holding that defendant was not entitled to new trial, because evidence of former boyfriend’s possible motive did not cast real doubt on the justice of the conviction in light of the strength of the Commonwealth’s case). While the few reported decisions addressing Chapter 278A instruct that the Court should not apply a new trial standard when performing its gatekeeping role in these precincts, it seems curious to authorize the costly testing of DNA evidence that would do little to cast real doubt on a defendant’s conviction. See Clark, 472 Mass. at 121-22 (“The act created a process, separate from the trial and any subsequent proceedings challenging an underlying conviction, that permits forensic and scientific analysis of evidence or biological material, the results of which could support a motion for a new trial’) (emphasis added). Notwithstanding such misgivings, however, the undersigned must adhere to the dictates of our appellate courts until such time as further guidance from them might avail.
ORDER
For the reasons set forth above, the Defendant’s Motion for Post Conviction Access to Evidence and Forensic Analysis Pursuant to G.L.c. 278A is ALLOWED.

 An appeal of this motion’s denial is currently pending.

 Under Section 3(b), the movant must provide the name and a description of the requested forensic or scientific analysis, information demonstrating that the requested analysis is admissible, a description of the evidence or biological material sought to be tested, information demonstrating that the analysis has the p otential to result in evidence that is material to the moving party’s identification as the perpetrator of the crime, and an explanation of why the requested testing was not conducted previously. Under Section 3(d), the movant must provide an affidavit asserting that he is “factually innocent of the offense of conviction and that the requested forensic or scientific analysis will support the claim of innocence.” See G.L.c. 278A, §3.

 On August 10, 2016, the Court conducted a conference call on the record with counsel, during which the parties stipulated that an evidentiary hearing was unnecessary in the circumstances of this case.

 In its Memorandum of Law, the Commonwealth has also raised arguments concerning factors 2, 3 and 5 of Section 7(b). However, during the Court’s August 10, 2016 conference call, the Commonwealth conceded that it was primarily concerned with whether Powell had satisfied factor 4; and this was likewise the singular focus of the Commonwealth’s argument at hearing. To the extent the Commonwealth still presses its other arguments, and this is unclear, the Court finds them to be unavailing. Powell has met his burden of proof in respect to the remaining Section 7(b) factors.

 Instead, appellate decisions under this statute have thus far placed greater focus on the meaning of the term “potential” in that Section. See Clark, 472 Mass. at 135-36; Coutu, 88 Mass.App.Ct. at 702; Lyons, 89 Mass.App.Ct. at 495.

In the face of the foregoing, the Commonwealth argues that the bat in the present case is like the pair of socks a defendant sought to test in Clark, where the Court rejected this aspect of the Chapter 278A motion. See 472 Mass. at 138. The Court does not agree. In Clark, the defendant wanted to test a knife that had been used in a sexual assault, as well as a pair of men’s socks found in the victim’s home. While the Court concluded that the testing of the knife had the potential to lead to material evidence pointing to an alternate perpetrator of the assault, the Court reached the opposite conclusion with regard to the socks. The Court, agreeing with the motion judge, concluded that the defendant had failed to satisfy factor 4, because the record did not indicate that the socks either belonged to or were ever touched by the victim’s assailant. The bat is thus not fairly comparable to the socks at issue in Clark. The defendant in Clark failed to show any conceivable connection between the perpetrator of the assault and the socks. Here, by contrast, Powell has shown that the bat may have been linked to the perpetrator of the crime. There was evidence presented at Powell’s trial that the victim had recently chased other individuals with this baseball bat. From such evidence, one can reasonably infer that the victim may have struck someone with the bat, causing blood from that person to adhere to it and giving rise to a strong motive for revenge. The case at bar, therefore, presents a much closer question.