LOWY, J.
**336 This case stems from three postconviction orders, issued by three different Superior Court judges on the same preprinted form, requiring that exhibits in the clerk's office of the **337 Superior Court in Middlesex County (clerk's office) be transferred to local police departments. The exhibits at issue are two firearms, live ammunition, a spent projectile and casing, other spent casings, a BB gun, and a baby carriage. The district attorney for the northern district petitioned a single justice of this court pursuant to G. L. c. 211, § 3, seeking to vacate the orders and to require that all exhibits that had been transferred to police departments be returned to the clerk's office. The single justice reserved and reported the case to the full court.
The issue before us is whether the clerk's office or the police departments are responsible for retaining the exhibits in these three separate criminal trials, each of which resulted in conviction. We conclude that the exhibit-transfer orders in two of the cases should be affirmed, and the order in the third case affirmed in part and remanded in part.
The broader issue is how to allocate responsibility for retaining and preserving exhibits after criminal trials to maintain the integrity of those exhibits. The importance of properly storing exhibits cannot be overstated. Without exhibit preservation, innocent people convicted of crimes may linger in prison for decades because they are unable to perform forensic tests through existing or emerging technologies. And with respect to those guilty of criminal offenses whose convictions are overturned or for whom the jury were unable to reach a verdict, the loss of exhibits or the compromising of the chain of custody might prevent reprosecution.
With the limitations discussed infra, courts, and particularly clerks' offices, have a statutory duty to secure, preserve, and retrieve exhibits admitted in criminal cases that result in conviction. Unfortunately, most of the court houses in this Commonwealth lack the facilities and trained staff to meet their statutory responsibility. Clerks' offices do the best they can with the resources and facilities provided, but what is needed is a state of the art facility staffed by trained professionals with appropriate organizational and retrieval capability and with climate control to preserve adequately forensic and *1053 scientific evidence. The need to preserve adequately these exhibits presents the three branches of government with a grave challenge that raises questions about the fair administration of justice. There is a shared responsibility among the branches of government to solve this problem. No branch is capable of solving it alone.
Background. Rigoberto Escobar, Matthew Thomas, and Timothy Berry were each tried and convicted of various crimes in the **338 Superior Court in Middlesex County.[1] In Escobar's trial, the Commonwealth introduced in evidence a .40 caliber firearm. On the same day that Escobar was found guilty, the judge signed a form order returning the firearm to the Everett police department.[2] The Commonwealth moved twice for reconsideration, asking the judge to order that the firearm be retained and stored by the clerk's office. After a hearing on each motion, the judge denied the motions in a written decision and ordered that the firearm remain at the Everett police department.
In Thomas's trial, the Commonwealth offered in evidence a BB gun and a baby carriage. After Thomas's conviction, the clerk's office submitted to the judge a form order to transfer the BB gun and baby carriage to the Lowell police department. The Commonwealth filed a motion requesting that the judge order the clerk's office to retain the exhibits. After a hearing, the judge denied the motion in a written decision and ordered that the exhibits be returned to the Lowell police department. The judge also signed the form order. The Commonwealth then filed a motion for reconsideration, which the judge denied in an order written on the face of the motion.
Finally, in Berry's trial, the Commonwealth offered in evidence a .45 caliber handgun, live ammunition, a spent projectile and casing, and other spent casings. The clerk's office asked the judge to sign a form order returning the exhibits to the Lowell police department, and the Commonwealth filed a motion requesting that the exhibits remain in the clerk's office. Without issuing a written decision and after a hearing, the judge denied the Commonwealth's motion and signed the form order.
**339 Discussion. 1. A hodgepodge of statutes and rules governs the retention in Superior Court cases of nondocumentary exhibits such as those at issue here.[3] This framework makes clerks' offices responsible for exhibits unless a judge orders otherwise. Rule 14 of the Rules of the Superior Court *1054 (1976) requires clerks to retain "[e]xhibits other than hospital records" for a certain period of time. And according to the Massachusetts Rules of Appellate Procedure,[4] after an appeal is commenced the clerk is responsible for maintaining the record, including exhibits, and for transmitting exhibits to appellate courts upon request.[5] See Mass. R. A. P. 8 (a), as appearing in 481 Mass. 1611 (2019) (record includes "documents and exhibits on file"); Mass. R. A. P. 9 (a) (1), as appearing in 481 Mass. 1615 (2019) ("clerk shall ... ensure that all exhibits are properly numbered and labeled" and "shall maintain the file until the final disposition of the appeal, unless otherwise ordered by a judge"); Mass. R. A. P. 9 (b), as appearing in 481 Mass. 1615 ("lower court ... shall not transmit any exhibit to the appellate court unless pursuant to an order of the appellate court or a justice thereof").
Most importantly, the evidence preservation statute, G. L. c. 278A, § 16 (a ), requires governmental entities "in possession of evidence or biological material" related to the investigation of a crime of which someone was convicted to "retain such evidence or biological material for the period of time that a person remains in the custody of the commonwealth or under parole or probation supervision in connection with that crime .... Each governmental entity shall retain all such evidence or biological material in a manner that is reasonably designed to preserve the evidence and biological material and to prevent its destruction or deterioration." [6] ,[7]
**340 This retention requirement applies to clerks' offices once an exhibit is admitted in evidence, at which point the evidence is in the clerk's possession. See G. L. c. 278A, § 1 (defining "[g]overnmental entity" as "an official body of the commonwealth, or of a county, city or town within the commonwealth").[8]
The evidence preservation statute is part of a legislative initiative "to remedy *1055 the injustice of wrongful convictions of factually innocent persons by allowing access to analyses of biological material with newer forensic and scientific techniques." Commonwealth v. Williams, 481 Mass. 799, 804, 119 N.E.3d 1171 (2019), quoting Commonwealth v. Wade, 467 Mass. 496, 504, 5 N.E.3d 816 (2014), S.C., 475 Mass. 54, 55 N.E.3d 409 (2016). Maintaining the integrity of exhibits is essential to this purpose. If exhibits are not preserved, then defendants will be unable to uncover potentially exculpatory forensic evidence. See G. L. c. 278A, § 2 (motions "for forensic or scientific analysis"). That being said, the retention requirement is not absolute: **341 "The evidence or biological material need not be preserved if it is ... of such a size, bulk or physical character as to render retention impracticable." G. L. c. 278A, § 16 (a ).
With these statutes and rules in mind, we conclude that Superior Court clerks' offices are responsible for maintaining exhibits posttrial unless a clerk's office satisfies a judge that there is good cause to believe retention would be impracticable.[9] Impracticability includes, but is not limited to, whether transfer is necessary for exhibit preservation. If there is good cause to believe retention in a clerk's office would be impracticable, then a judge may order the exhibits transferred.
A clerk's office may seek to satisfy the good cause standard by proffer or affidavit, and the judge need not conduct an evidentiary hearing. In ruling on a motion to transfer exhibits, a judge must provide a short statement of factual findings and reasons for granting or denying the motion. The findings and rationale may be dictated orally as part of the record. See Brangan v. Commonwealth, 477 Mass. 691, 693-694, 80 N.E.3d 949 (2017).
The good cause standard need not be satisfied in two situations. First, the standard does not apply where exhibits are transferred by agreement, including pursuant to motions for the return of evidence.[10] See G. L. c. 278A, § 16 (a ) (evidence need not be preserved "if it is to be returned to a third party"); Rule 14 of the Rules of the Superior Court (clerks need not retain for specified length of time exhibits that are "sooner delivered to the parties or counsel to whom they ... belong or by whom they were ... introduced"). And second, the standard does not apply where exhibits are transferred pursuant to statute.[11]
*1056 Where the good cause standard does apply, it applies to all **342 exhibits that are not covered specifically by statute, including certain firearms and ammunition. This means, contrary to the clerk's office's current policy, that a clerk's office must satisfy the good cause standard each time it wishes to transfer a firearm or ammunition not covered by statute. A memorandum from the clerk's office to assistant clerks dated June 8, 2017, that is in the record (clerk's office memorandum or memorandum) states that, "due to space limitations and public safety issues, long term firearms storage at Middlesex Superior Court is highly impracticable." Accordingly, the clerk's office's policy is to return all firearms and ammunition to the Commonwealth after criminal trials. This firearms policy is purportedly bolstered by the rationale behind various statutes, see note 11, supra, that require the transfer of particular firearms to the State police after conviction.
Although the clerk's office memorandum is correct to recognize an impracticability standard that accounts for space limitations and safety concerns, we decline to establish a blanket rule that all firearms are impracticable to store. Unless transferred by agreement or pursuant to statute, firearms must be kept in clerks' offices absent good cause to believe that storage of the particular firearm at issue is impracticable.[12] ,[13]
2. The decision whether to grant a motion to transfer exhibits is left to a judge's sound discretion. Cf. Canavan's Case, 432 Mass. 304, 312, 733 N.E.2d 1042 (2000) (in context of expert testimony, "applying an abuse of discretion standard on appellate review will allow trial judges the needed discretion to conduct the inherently fact-intensive and flexible ... analysis"). "An abuse of discretion occurs only where the judge makes " 'a clear error of judgment in weighing" the factors relevant to the decision ..., such that the decision falls outside the range of reasonable alternatives.' "
**343 Commonwealth v. Keown, 478 Mass. 232, 242, 84 N.E.3d 820 (2017), cert. denied, --- U.S. ----, 138 S.Ct. 1038, 200 L.Ed.2d 292 (2018), quoting L.L. v. Commonwealth, 470 Mass. 169, 185 n.27, 20 N.E.3d 930 (2014). After examining the record, which is entirely documentary, we conclude that the orders in Berry's and Escobar's cases should be affirmed, and that the order in Thomas's case should be affirmed in part and remanded in part. On remand, the judge in Thomas's case should apply the standard for exhibit-transfer orders we announce today.
Although the reasoning of the three judges does not comport entirely with the good cause standard we have articulated, the record supports their decisions with respect to the BB gun, firearms, and ammunition at issue. See *1057 Clair v. Clair, 464 Mass. 205, 214, 982 N.E.2d 32 (2013) ("appellate court may affirm a correct result based on reasons that are different from those articulated by the judge below"). According to the clerk's office memorandum, which appears to have been before all three judges, the clerk's office is "out of secure storage space" and does "not have the capacity to expand the secure vault," which holds "controlled substances, firearms, ammunition and currency admitted into evidence." The memorandum also explains that, "[u]nlike evidence officers and troopers, [c]lerks are not trained in the proper handling of firearms and ammunition." This information provides good cause to believe it would be impracticable at this time to store in the clerk's office the two firearms, live ammunition, spent projectile and casings, and BB gun at issue here.[14] The decisions in Berry's and Escobar's cases are therefore affirmed, as is the decision in Thomas's case as it pertains to the BB gun.
However, the judge in Thomas's case also ordered that a baby carriage be transferred. Nothing in the record suggests that there is insufficient space in the clerk's office for this item. The clerk's office memorandum speaks to a lack of space only in the secure vault, and suggests that items other than controlled substances, firearms, ammunition, and currency are not stored in that vault. The memorandum mentions other "evidence rooms and vaults," but does not address how many of these rooms exist, what is stored in them, or whether they are full.
**344 Admittedly, the letter to Trial Court employees that accompanied the November 2016 revisions to the Trial Court's exhibit retention policy stated that clerks' offices are not built for long-term storage: "The revised policy reflects the position that the Trial Court and its [c]lerks' offices are not intended to be ... long-term evidence repositories nor are they physically suited or equipped to assume that role." However, this broad statement is insufficient to satisfy the good cause standard with respect to the baby carriage. We remand for further findings.
3. The standard we announce today does not resolve the vexing issue of the safe storage and preservation of exhibits admitted in evidence in criminal trials, as mandated by G. L. c. 278A, § 16 (a ). A case-by-case approach to exhibit preservation is inefficient and is more likely than a comprehensive solution to result in exhibits being compromised. Moreover, in the long term, the clerk's office may not simply rely on lack of staff training or inadequate space to avoid its obligation to store and preserve exhibits.
We recognize our superintendence responsibility to ensure that exhibits retained in clerks' offices are secure, preserved, and capable of retrieval in a manner that maintains the chain of custody. To that end, we can improve staff training and work with the Division of Capital Asset Management and Maintenance to identify capital improvements within the court houses in this Commonwealth, thereby enhancing the courts' capacity to maintain exhibits safely. However, we cannot solve this problem alone. Improving the storage capacity of various clerks' offices is not the most efficient long-term solution, and all capital improvements rest with the executive *1058 branch. Moreover, we cannot order the Legislature to appropriate funds for a state of the art storage facility, nor can we order the executive branch to build one.
Sometimes the most routine tasks occurring well beyond the piercing eye of the public nonetheless require the most energy and insight of dedicated public officials. The orderly storage of deoxyribonucleic acid deposited on clothing or ballistics evidence obtained from a firearm utilized as a murder weapon may be pivotal in avoiding the conviction of the innocent or the acquittal of the guilty. There is an urgent need for cooperation and compromise between and among the branches of government. At issue is not merely the integrity of exhibits. It is the integrity of our criminal justice system, the bedrock of which is fairness, that is at stake.
**345 For the foregoing reasons, the orders in Berry's and Escobar's cases are affirmed and the order in Thomas's case is affirmed in part and remanded in part.
So ordered.

Rigoberto Escobar was convicted of murder, carrying a firearm without a license, possessing a loaded sawed-off shotgun, and discharging a firearm within 500 feet of a building. Matthew Thomas was convicted of armed assault with intent to rob and assault and battery by means of a dangerous weapon. Timothy Berry was convicted of home invasion, kidnapping, assault and battery by means of a dangerous weapon, carrying a firearm without a license, possessing a firearm without a firearm identification card, and impersonating a police officer. All but one of Berry's convictions included a habitual offender penalty enhancement.

The form orders in all three cases are entitled, "Order to Return Exhibits." A judge selects what is being returned from a list: "controlled substances"; "firearms, ammunition, currency, or other contraband"; or "other exhibits." There is space to denote the police department responsible for taking custody of the evidence, if applicable. There also is space for the judge to write the "reasons for ordering return of exhibits."

Other statutes and rules are limited to court papers. See G. L. c. 221, § 14 ("care and custody" of "records, books and papers"); S.J.C. Rule 1:06 (10), as appearing in 411 Mass. 1313 (1991) (retention of "docket, files, and ... extended and full extended records"); S.J.C. Rule 1:11, as appearing in 480 Mass. 1322 (2018) (retention of "case records").

The latest amendments to the Massachusetts Rules of Appellate Procedure did not go into effect until March 2019, after the exhibit-transfer orders here were issued. But because we aim in this opinion to resolve future disputes about exhibit retention, we think it prudent to analyze the relevant rules and statutes as they currently exist.

The Commonwealth's motions for reconsideration were denied after Escobar and Thomas appealed. In contrast, there were no rulings on the exhibit-transfer issue after Berry appealed.

General Laws c. 278A, § 16 (a ), states: "Any governmental entity that is in possession of evidence or biological material that is collected for its potential evidentiary value during the investigation of a crime, the prosecution of which results in a conviction, shall retain such evidence or biological material for the period of time that a person remains in the custody of the commonwealth or under parole or probation supervision in connection with that crime, without regard to whether the evidence or biological material was introduced at trial. Each governmental entity shall retain all such evidence or biological material in a manner that is reasonably designed to preserve the evidence and biological material and to prevent its destruction or deterioration. The evidence or biological material need not be preserved if it is to be returned to a third party or if it is of such a size, bulk or physical character as to render retention impracticable."

General Laws c. 278A, § 16 (a ), supersedes Rule 14 of the Rules of the Superior Court (1976) to the extent that that rule allows exhibits to be destroyed after conviction. See Hermanson v. Szafarowicz, 457 Mass. 39, 45, 927 N.E.2d 982 (2010) ("Where there is ... an irreconcilable conflict between a court rule and a statute, the statute supersedes the rule").

As required by G. L. c. 278A, § 16 (b ), the Department of State Police has "promulgate[d] regulations governing the retention and preservation of evidence or biological material by any governmental entity." See 515 Code Mass. Regs. §§ 7.00 (2018). See also Massachusetts Chapter 278A Working Group, Best Practices Manual for Evidence Collection, Handling, Storage, and Retention in Massachusetts (June 2015), https://www.publiccounsel.net/pc/wp-content/uploads/sites/4/2014/09/Best-Practices-Manual-for-Evidence-Collection-Handling-Storage-and-Retention-in-Massachusetts-FINAL-VERSION-2.pdf [https://perma.cc/2GHC-JVLC]. We do not address the enforceability of 515 Code Mass. Regs. §§ 7.00 as they relate to the Trial Court, but we see no reason why, absent court order, clerks' offices should not comply with these regulations.

Policies of the Trial Court and of the clerk's office of the Superior Court in Middlesex County (clerk's office) recognize that clerks are responsible for exhibits unless retention is impracticable. According to the Trial Court's exhibit retention policy in criminal cases, revised November 28, 2016, a clerk "may return an exhibit to the party who offered it into evidence if post-trial retention of that exhibit within the courthouse is impracticable." And according to a memorandum from the clerk's office to assistant clerks dated June 8, 2017, that is in the record (clerk's office memorandum or memorandum), after a guilty verdict, exhibits other than controlled substances, firearms, ammunition, and currency should be stored in the clerk's office "[u]nless they are impracticable to store, and [the clerk's office] seek[s] permission to return the item(s)."

We do not address situations in which a third party requests the return of an exhibit that the clerk seeks to retain.

For example, certain items are automatically transferred to the State police after conviction. See G. L. c. 269, § 10 (e ) (firearms and various other weapons possessed unlawfully); G. L. c. 269, § 10A (silencers); G. L. c. 269, §§ 11B, 11C (firearms with removed identification numbers); G. L. c. 269, § 12B (BB guns); G. L. c. 269, § 12D (c ) (rifles and shotguns carried on public ways). See also G. L. c. 276, § 3 (requiring police to return recovered stolen property).

Later in the opinion, we rely on the clerk's office memorandum in affirming partially the exhibit-transfer orders here. The clerk's office may not rely solely on this memorandum if it seeks to transfer similar exhibits in the future. Rather, it must provide evidence that storage remains impracticable at the time of the proposed transfer.

We have concerns that pragmatically it does not make sense to store firearms over the long term in a clerk's office. Nonetheless, the relevant statutes and rules demonstrate that the clerk's office may be required to maintain possession of firearms absent good cause shown, agreement, or statutory authorization.

Thomas and Berry were tried in Lowell. Escobar was tried in Woburn. The clerk's office memorandum refers only to the "Middlesex Superior Courthouse and the Office of the Middlesex Superior Court Clerk," and therefore might not apply to both the Lowell and Woburn court houses. Although this is not fatal to the good cause showing here, it is best practice for clerks' offices to reference all court houses where evidence could be stored.